BORCHERT et al. v. CITY OF RANGER, TEX. et al.

Civ. A. No. 330.

District Court, N. D. Texas, Fort Worth Division.

Nov. 24, 1941.

Hayden C. Covington, of Brooklyn, N. Y., and Walter A. Nelson, of Fort Worth, Tex., for plaintiffs.

L. R. Pearson, of Ranger, Tex., for defendant City of Ranger.

Dick Harbin, of Dublin, Tex., for defendant City of Dublin.

D. P. Parker, City Atty., of Brownwood, Tex., for defendant City of Comanche.

W. B. Baker and D. L. Snodgrass, both of Coleman, Tex., for defendant City of Coleman.

JAMES C. WILSON, District Judge.

These plaintiffs, calling themselves Jehovah's Witnesses, were prosecuted under ordinances of the defendant cities for preaching their faith through the distribution of books, pamphlets and by sermons upon phonographs and here seek injunctions that would restrain defendants from doing so in the future.

There is a little difference between the defendants in the character of such prosecutions, also in their pleadings and admissions. Likewise, some differences in their ordinances, under which the prosecutions were had. But, as affecting the decision here, those differences are not so substantial as to make any distinction between them.

The Ranger ordinances, the first one, was passed in 1925, and the second in 1935. They appear to be simply against all kinds of peddling and do not expressly cover the distribution of literature, books or the preaching of sermons. But, nevertheless, these plaintiffs, two of them, were prosecuted under the Ranger ordinance for distributing the literature of the Jehovah's Witnesses. The attitude here of the City of Ranger is that it does not expect to fur-

ther prosecute the plaintiffs for any like activities under its ordinance. But that statement made in open court by its counsel is qualified somewhat by its Mayor who, in substance, said there would be no no prosecutions if these plaintiffs did not disturb the citizens by distributing their literature or preaching sermons on the phonograph, and if they did so they would have to do something about it. Well, I take it, that statement by the Mayor meant, if they did so, there would be more prosecutions. I am not able to place any other construction u,.on it.

The other defendants avowed in open court, they expected to enforce their ordinances as they had in the past unless restrained from doing so. The ordinances of the Cities of Dublin, Comanche and Coleman are substantially alike, and the dates of their passage are such and their wording such that it is reasonable to conclude they were intended to make unlawful such activities as the plaintiffs have engaged in in those cities in promoting their faith, whatever the method may be. Those ordinances expressly cover the distribution of literature, handbills, circulars, leaflets, newspapers, and printed matter of every kind. They require before any person can engage in such activities that permits or licenses must be procured. They conclusively breathe the purpose that a wide discretion be lodged in some City official to determine whether such permits or licenses shall be granted. In other words, are carte blanche authority given to unnamed officials, with no standard of judging laid down, to determine whether requested permits be granted. In one of the ordinances it is provided, if the officer passing upon such a request in his judgment concludes that the distribution of such literature would cause riots, mobs, etc., in that event, he could deny the permit to distribute any literature. That, in effect, confers authority to act arbitrarily. It all demonstrates it is what the Jehovah's Witnesses preach, not how or where they preach, that accounts for these prosecutions.

Now, such rights as are here asserted by plaintiffs have been upheld by the Supreme Court of the United States, condemning at the same time such prosecutions and practices as defendants have engaged in.

In passing, however, I may say there is a phase of this case which strikes me as leaving plaintiffs in a very inconsistent position. It has not been referred to by counsel. I can see, though, plaintiffs' petition has been adroitly drawn with this inconsistency in view, and that is this: The plaintiffs claim and allege that their faith and their practices do not constitute a religion. I am not going to quarrel with them about that. At the same time, the basic law upon which they really rely here is the First Amendment to the Constitution, which guarantees to all of us religious freedom. They rely next upon the Fourteenth Amendment. That is essential to their cause but primarily, whatever privileges or immunities they assert here, either as to the freedom of religion or the press, are guaranteed by the First Amendment.

On the third page of plaintiffs' petition they allege: "That Jehovah's witnesses are an unincorporated body of followers of Jesus Christ, entirely devoted to Him and His Father, Almighty God 'whose name alone is Jehovah'; that each of said witnesses is in a covenant with Almighty God to obey His will and diligently and faithfully to carry out the commands of the Most High God recorded in His Word, the Bible; and that they are not a sect, cult or religion; that by the terms of said covenant they are required to give witness to the name, honor and majesty of Almighty God and His Theocratic Government. Jehovah's witnesses are not a recently organized group but members of that group have been active on earth at all times during more than six thousand years last past."

On page 16 of their petition they allege: "That each of the four above described ordinances of said municipalities is unconstitutional and void as construed and applied by defendants against plaintiffs because as so construed and applied each of said enactments has been used and will be used unlawfully to deny and deprive plaintiffs and other of Jehovah's witnesses of their 'civil rights' of freedom of speech, of press and of assembly, and freedom to worship Almighty God according to His written commands and in accordance with dictates of plaintiffs' consciences, all contrary to the Federal Constitution, Fourteenth Amendment, Section 1."

It will be seen counsel have drawn the petition expressly citing only the Fourteenth Amendment. But general allegations throughout are made that plaintiffs' rights are guaranteed under the Constitution. There is no grant of the privileges and immunities which plaintiffs claim no State or municipality may strike down, ex-

cept in the First Amendment to the Constitution.

■ Of course, these plaintiffs in their preachings are not bound by any definition of religion, nor is this Court bound by their disclaimer of religion as pleaded by them, or as testified to by their leader. Webster's Dictionary defines religion. It says:

"Specifically, conformity in faith and life to the precepts inculcated in the Bible, respecting conduct of life and duty toward God and man; the Christian faith and practice.

"Devotion or fidelity, as to a principle or practice; scrupulous conformity; conscientiousness; deep attachment like that felt for an object of worship."

■ Of course, if plaintiffs did not stand here pleading the right to worship God as they choose, they would be exactly in the position of newspapers, only pleading the constitutional immunities of the press. There are many severe limitations upon them, despite the guarantees of freedom of speech and press. There are no restrictions upon the freedom of choice of religion and the least of valid restraints upon the exercise of it. The facts here show that plaintiffs' faith, according to our laws and all our information, is a religion. Individuals are free to define or classify it as they please, but whether it is legally a religion rests with the courts.

The pertinent provisions of the Constitution which control are as follows: First Amendment, Article 1: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; * * *".

Now, that merely provides Congress shall not make laws respecting an establishment of religion or the exercise of it. It says nothing about the States, but Amendment XIV, Section 1, after providing who is a citizen, takes care of that in the following words: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; * * *".

The States, by their adoption of those amendments, thereby surrendered all power to pass any laws that would deny or shorten any privileges or immunities granted by the Constitution to a citizen. Privileges and immunities so granted to plaintiffs are what they would have the courts uphold and there would be no such immunities and

privileges, as they here assert, were it not for the inhibition in Amendment 1 that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." There is where the rights plaintiffs stand upon were created. Counsel for plaintiffs, in oral argument, expressly disavow any purpose of their clients to bring themselves under that basic law which guarantees religious freedom. Yet plaintiffs do, and must, rely upon it if they are to have the full protection they seek. Were it not so their position would be very materially altered. It would make a different case. What the decision would then be, I am not called upon to say. Obviously the Fourteenth Amendment affords no protection to plaintiffs in the absence of the First.

■ In the disposition of this case I must look to the facts alleged and established, not to mere opinions of the pleader. Though it is not binding upon the mentality of these plaintiffs, I hold their faith constitutes a religion under our Constitution and under all definitions found in dictionaries and in the decisions of the courts of this country; also that preaching such religion orally, by phonographs, the distribution of pamphlets, or printed sermons, carrying information or opinions about it to others, is a legitimate exercise of such religion; of course with the reservation that any such exercise of it must be within reasonable bounds and with due regard to the rights of the Federal Government, State Governments and their municipalities to make reasonable regulations for the health, safety, welfare, and convenience of their respective citizens.

■ Such criminal prosecutions as were carried on by these cities are unlawful and such acts as plaintiffs have been prosecuted for were lawful. It is not necessary to cite all the authorities, they are too numerous. It will suffice to mention the following: Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; Cantwell et al. v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352; and the case of Schneider v. State of New Jersey, 308 U.S. 147, 60 S.Ct. 146, 150, 84 L.Ed. 155.

It will only be necessary here to read the principles laid down in the Schneider case. I think it is time the Jehovah's Witnesses and all of our cities in Texas should know what the law relative to this matter is as declared by our Supreme Court. Partic-

ularly so, since a part of the Jehovah's Witnesses' religion, now becoming especially notable because we face a great war emergency, is their conscientious objecting to any, except noncombatant, military service. The opinion is by Justice Roberts, who seems to have become rather a leader of the Court in dealing with such subjects. It was a Jehovah's Witness case, with facts and ordinances almost identical to this one. It reads:

"Although a municipality may enact regulations in the interest of the public safety, health, welfare or convenience, these may not abridge the individual liberties secured by the Constitution to those who wish to speak, write, print or circulate information or opinion.

"Municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated. So long as legislation to this end does not abridge the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regulate the conduct of those using the streets. For example, a person could not exercise this liberty by taking his stand in the middle of a crowded street, contrary to traffic regulations, and maintain his position to the stoppage of all traffic; a group of distributors could not insist upon a constitutional right to form a cordon across the street and to allow no pedestrian to pass who did not accept a tendered leaflet; nor does the guarantee of freedom of speech or of the press deprive a municipality of power to enact regulations against throwing literature broadcast in the streets. Prohibition of such conduct would not abridge the constitutional liberty since such activity bears no necessary relationship to the freedom to speak, write, print or distribute information or opinion. * * *

"In every case, therefore, where legislative abridgment of the rights is asserted, the courts should be astute to examine the effect of the challenged legislation. *Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions.* And so, as cases arise, the delicate and difficult task falls upon the courts to weigh the circumstances and to appraise the substantiality of the reasons advanced in support of the regulation of the free enjoyment of the rights." (Italics mine.)

██ The defendants' counsel to some extent have rather seen fit, in their examination of witnesses, to attack the faith of these plaintiffs. Apparently, they consider, or take the viewpoint, that the merits or fallacies of this religion are material matters for the Court's consideration. But I do not think so. Whether any of us are right in our religion, or in having no religion, is not a subject of knowledge. It is only a matter of belief or opinion. I will say this, that more people in my judgment have been defrauded throughout the world's history by the propagation of religions than through any other one line. In each such instance a leadership, supposedly of great spiritual inspiration and fervor, each claiming to be chosen of God, have been the sole or chief beneficiaries, either in gains of power or money, or both, of such fraudulent schemes. We have had and are having our share of them in America, possibly of greater variety than in any other part of the world. But it merely emphasizes that freedom of religion in America is truly an established fact, in this, that such freedom here means the absolute right of every man to embrace any form of religion that suits him, however fanatical or even idiotic it may be. Be it so, he will not, and cannot, be legally interfered with in the exercise of such religion, as long as its exercise is without hurtful impairment to the rights of others. On the other hand, our laws as fully protect every man in his absolute right to reject any and all religions and likewise to speak or write against them, with like reservations. This privilege and immunity the Jehovah's Witnesses, themselves, avail of since they expressly reject and condemn all religions.

In spite of this well-established legal system, in existence since the adoption of those amendments, in localities, from time to time, we have outbursts of violent efforts to deny and to overturn such system. It is, furthermore, strange that people will not learn the best way to fight any religion, thought to be fallacious and hurtful to our country, is to ignore it; also that to fight a religion by the passage of invalid laws against it or by a wrongful application of valid ones, are comparable to trying to put out a fire by pouring gasoline on it. It can only have the result to make it grow.

So in answer to defendants' counsel, with respect to their attacks upon plaintiffs' faith and practices, I merely say that it is not my right as a Judge here to either praise or condemn.

I am not holding that these ordinances of the various defendant cities are invalid. They might be perfectly valid and enforceable against certain activities that may be carried on in their midst. However, they cannot be enforced to deny any one such privileges and immunities guaranteed by our Constitution. I am holding as to these plaintiffs, there was an unconstitutional application of those ordinances to them. Plaintiffs will be granted injunctions as prayed for, ·applicable to all defendants.

Orders may be drawn accordingly.