**STATE ex rel. ROSENBERG v. HEADLEY, Chief of Police.**

Circuit Court, Dade County.

October 27, 1948.

Aronovitz, Schreiver & Tannen, Miami, for petitioner.

J. W. Watson, Jr., Miami, for respondent.

STANLEY MILLEDGE, Circuit Judge.

Petitioner challenges, as an infringement upon his right of free speech, the validity of section 195 of ordinance no. 2574 of the city of Miami, adopted in 1941, which prohibits the operation on the city streets of vehicles with sound devices for the purpose of "advertising, soliciting or attracting attention thereto, for any purpose whatsoever," except in parades for which a permit is required. The parties agree that the ordinance is a complete prohibition against the operation on the streets of vehicles with sound devices in actual operation. That was the circumstance which produced this attack upon the ordinance, for the petitioner was arrested while making a political speech from a sound truck then being operated on the streets of Miami.

Petitioner relys upon Saia v. N. Y., 334 U. S. 558, 92 L. ed. 1574, and Schneider v. Irvington and companion cases, 308 U. S. 147, 84 L. ed. 155. I think that the activity of the petitioner, or any activity contrary to the ordinance does not abridge liberty of speech "since such activity bears no necessary relationship to the freedom to speak, write, print or distribute information or opinion," to quote from the opinion in the Schneider case. The ordinance can maintain itself against attack on two propositions: first, I know of no reason or authority to prevent a municipality from protecting its inhabitants against what Mr. Justice Frankfurter aptly calls aural aggression, by prohibiting sound trucks from the streets. The Saia case decides no more than that the Lockport, N. Y., ordinance was void because it delegated to the police chief the discretion to grant or withhold a permit to set up sound equipment in a public park for the purpose of religious lectures. Even with that factor present four members of the court dissented and the opinions of Mr. Justice Frankfurter and Mr. Justice Jackson amply cover the support of the ordinance on my first proposition. If any inference of future decision can be made on the basis of the Saia case it is that had the Lockport ordinance not contained the delegation of power to the police chief that ordinance would have been upheld and that this Miami ordinance would be upheld. I think that what has unduly en-

couraged the petitioner is the dictum of Mr. Justice Douglas in the majority opinion when he speaks of "the right to be heard." One must conclude that the court did not mean this literally for there is no such right. What is protected is the right to speak or to write— the freedom of voluntary action. There is equal volition of others to read or to listen or to refuse to do so. Westbrook Pegler undoubtedly has a constitutional right to his daily column but I have a constitutional right not to read it. The phrase "right to be heard" necessarily implies the right to coerce listeners. The fact that four other justices concurred with Mr. Justice Douglas' conclusion does not mean that they (or he for that matter) are prepared to decide future cases in accord with his dictum.

Perhaps the petitioner places his chief reliance on the Schneider case. There the court was concerned with various ordinances designed to prevent street littering by penalizing the distributors of literature on the street. Mr. Justice Roberts there said for the court—"We are of opinion that the purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it." In the ordinance before me no question of willingness is present for the petitioner demands *unwilling* hearers as well as willing hearers. But the main point I now wish to make is that there is a fundamental difference between prohibiting an act because it has a tendency to litter streets and prohibiting an act which has a tendency to add to traffic hazards. That the use of sound trucks on city streets adds to such hazards is probably an understatement. The primary purpose of streets is to provide for movement of people and property. See the opinion in the Schneider case in which as an illustration of an unquestionable act of appropriate prohibition is a person (for the purpose of imparting information through speech or literature) standing in the middle of a crowded street, contrary to traffic regulations, and maintaining his position to the stoppage of traffic. But it is as much the duty of municipal authorities to render traffic safe as it is to prevent a temporary stoppage. The size of the problem of safety is suggested by the figures of the Miami police department which report that for the year 1947 from 7,902 traffic accidents property damage was $3,160,800, 369 persons were injured and 37 killed. This from within the Miami city limits which do not include large congested adjacent areas with heavy and dangerous traffic. Even a generation ago the Florida Supreme Court held that an automobile is a dangerous instrumentality. Cases involving civil liability are not uncommon in which the act of negligence is paying attention to some distracting factor instead of concentrating on the business of driving. Efforts of many cities to

reduce noise and particularly the noises of car horns and engine exhausts is a recognition that excessive noise affects traffic safety. Obviously, the sound of a voice over a loud speaker demanding attention is a far greater danger than mere general street noises. In fact, the sound truck is of no value to the speaker unless he obtains and holds the attention of at least some within earshot. Reducing the risk, or rather refusing to permit an additional danger, to those lawfully on the streets using them for their primary purpose is a proper exercise of police power. To be sure the prohibition of sound trucks on the streets is some slight restraint on freedom of speech but no one suggests that this right is subject to no limitations whatever. The constitution assumes an orderly society so there can be a condition in which freedoms may be enjoyed.

It appearing to the court that the ordinance in question is valid on its face and there being no attack made on the manner of its enforcement, it is ordered that the petitioner, Alfred P. Rosenberg, be remanded to the custody of the respondent to be dealt with according to law.