Fine, J. P.
(dissenting). I dissent and would reverse the conviction on the following memorandum.
Valentine v Chrestensen (316 US 52) has not been overruled. Accordingly, in order for this court to reverse the conviction we must find that the distribution of the leaflets here was not in conflict with that decision.
The regulation provided that: "This section is not intended to prevent the lawful distribution of anything other than commercial and business advertising matter”. It appears that such was inserted therein to conform to the determination in Valentine (supra) which had held that "purely commercial advertising” was an area where First Amendment protection did not apply.
If the pamphleteering here is "purely commercial advertising” the conviction must be sustained. However, the concerts which were being advertised were a form of "speech” protected by the First Amendment. The handbills contained the names and likenesses of the artists, the time, place and date of the concerts, the price of tickets and where they could be purchased. If the concerts are protected by the First Amendment it must follow, that the notification to the public of such must also be. Protection of freedom of speech would be meaningless if it could not be heard by the public. The advertising here did nothing more than apprise the public of the concerts, so that they might attend if they desired. Its purpose was to increase the attendance at the concerts. As such, it was seeking a greater exposure of the protected artistic expression it advertised.
Valentine (supra) was not concerned with the advertising of an activity protected by the First Amendment. There the handbill merely proposed a commercial transaction, i.e., the sale of tickets for the tour of a submarine. Here, it circulated information with respect to the time and place of a protected art form. The fact that profit was a motivating factor does not render it "purely commercial advertising” (Joseph Burstyn, Inc. v Wilson, 343 US 495; New York Times v Sullivan, 376 US 254).
In addition, the section of the Administrative Code here *461 involved was enacted by the City Council as Local Law No. 99 of 1955 of the Local Laws of the City of New York. It stated in the preamble: "A local law to amend the administrative code in relation to littering”.
Section 755(2)-7.0 is headed: "Littering prohibited. No person shall litter, sweep, throw or cast, or direct [various persons] to litter, sweep, throw or cast”.
The instant subdivision 5 of section 755(2)-7.0, provides: "No person shall throw, cast or distribute, or cause or permit to be thrown, cast or distributed” (emphasis supplied).
The word littering conveys the meaning of scattering about in a careless manner.
The word throw suggests the hurling of something with a rapid motion of the arm. The word cast implies a propulsion with haste or violence. However, the word distribute does not connote any impetuous action. It is concerned with an orderly passing out of some article or paper. As such it cannot be an alternative for the words throw and cast with which it is linked in the section.
The Council clearly indicated that this section was related only to littering. It is conceded that there was no littering in this case. The words throw and cast are consonant with the notion of littering. The word distribute is not. I have no quarrel with section 755(2)-7.0, however when subdivision 5 extends the violation to include the distribution of any handbill it is improper, as it cannot be in any sense littering.
This does not mean that the municipality is without power to enact legislation to prevent littering.
The Supreme Court of the United States in the case of Schneider v State (308 US 147) held that the interest of the city in the prevention of littering is insufficient to support an ordinance forbidding the dissemination of handbills protected by the First Amendment. However, it did hold (p 162): "This constitutional protection does not deprive a city of all power to prevent street littering. There are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the streets”.
Therefore, I hold that as the section is concerned with littering and as mere distribution is not littering, it improperly charges an infraction where none exists.
Accordingly, the judgment of conviction should be reversed.