The Honorable Mark Riable State Representative 16611 Burlingame Road Little Rock, Arkansas 72211
Dear Representative Riable:
This is in response to your request for an opinion on the following question:
 Since gambling in Arkansas is illegal, except for pari-mutuel wagering at Oaklawn Park and Southland Greyhound Park, if the Arkansas General Assembly passed a bill forbidding the advertising of gambling, would such a bill be constitutional in your opinion?
In your correspondence, you note that this question arises as a result of concern over out-of-state gambling establishments advertising in Arkansas in order to attract Arkansas citizens to these establishments.[1]
With regard to your hypothetical question, I am unclear as to whether you are referring to a bill which would allow advertising of those forms of gambling which are legal in the state (the ones referenced in your question) but which would prohibit advertisements of those forms of gambling which are illegal, such as casino gambling and lotteries, or whether you are referring to a bill which would ban advertisements of all forms of gambling, including those which are legal in the state. If you are referring to the former (bill which would make a distinction), it is my opinion that such a bill could be constitutionally suspect under the commerce clause, U.S. Const. Art. I, 8, cl. 3, which has been described as follows:
 It has long been accepted that the Commerce Clause not only grants Congress the authority to regulate commerce among the States, but also directly limits the power of the States to discriminate against interstate commerce. See, e.g., Hughes v. Oklahoma, 441 U.S. 322, 326 . . . (1979). . . This "negative" aspect of the Commerce Clause prohibits economic protectionism — that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors. . . . Thus, state statutes that clearly discriminate against interstate commerce are routinely struck down . . . unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism, see, e.g., Maine v. Taylor, 477 U.S. 131 . . . (1986).
New Energy Co. of Indiana v. Limbach, 486 U.S. 269, 273,108 S.Ct. 1803, 100 L.Ed.2d 302 (1988).
If, on the other hand, your hypothetical question refers to a bill which would prohibit advertising of all forms of gambling, including those forms which are legal in the state, it is my opinion that such a bill could in all likelihood withstand constitutional scrutiny under the First Amendment. The issue raised with regard to such a bill is whether it would violate the "Free Speech Clause" of the First Amendment to the United States Constitution, which is applicable to the states via theFourteenth Amendment. See Schneider v. State, 308 U.S. 147,160, 60 S.Ct. 146, 84 L.Ed. 155 (1939).
For many years, purely commercial advertising was not considered to implicate the constitutional protection afforded by the First Amendment. See Valentine v. Chrestensen, 316 U.S. 52,54, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). In 1976, the United States Supreme Court extended First Amendment protection to speech which does "no more than propose a commercial transaction." Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 762,96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). The Court's decisions, however, have recognized the "commonsense distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech." Ohralik v. Ohio State Bar Ass'n.,436 U.S. 447, 455-56, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). These distinctions have led the Court to conclude "[t]he Constitution . . . affords a lesser protection to commercial speech than to other constitutionally guaranteed expression." United States v. Edge Broadcasting Co., 509 U.S. ___, ___,113 S.Ct. 2696, 2703, 125 L.Ed.2d 345, 355 (1993) (citing Board of Trustees of State Univ. of New York v. Fox, 492 U.S. 469, 477,109 S.Ct. 3028, 106 L.Ed.2d 388 (1989); Central Hudson Gas 
Electric Corp. v. Public Service Comm'n, 447 U.S. 557, 563,100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); and Ohralik,436 U.S. at 456, 98 S.Ct. 1912, 56 L.Ed.2d 444. In Central Hudson Gas Electric Corp. v. Public Service Comm'n, 447 U.S. 557,100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the Supreme Court set forth a four-part test for determining whether government restrictions on commercial speech violate the First Amendment:
 At the outset, we must determine whether the expression is protected by the First Amendment. [1] For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask [2] whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine [3] whether the regulation directly advances the governmental interest asserted, and [4] whether it is not more extensive than is necessary to serve that interest.
Central Hudson, 447 U.S. 557, 566, 100 S.Ct. 2343,65 L.Ed.2d 341. The four-part test set forth in Central Hudson is recognized by courts as the general scheme for assessing government restrictions on commercial speech. Since Central Hudson the Court, however, has modified the fourth prong of the test by holding that the "fit" between the restriction on commercial speech and the governmental interest asserted need only be reasonable, and thus not necessarily perfect. See Board of Trustees of State Univ. of New York v. Fox, 492 U.S. 469,480, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989).
With respect to the burden of proof in commercial speech cases, the Supreme Court has recently stated:
 It is well established that "[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it." Bolger v. Young's Drug Products Corp., 463 U.S. 60, 71, n. 20, 77 L.Ed.2d 469, 103 S.Ct. 2875 (1983); Fox, 492 U.S., at 480, 106 L.Ed.2d 388, 109 S.Ct. 3028. This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.
Edenfield v. Fane, 507 U.S. ___, ___, 113 S.Ct. 1792, 1800,123 L.Ed.2d 543, 555 (1993).
The Court in Edenfield also stated that commercial speech is "`linked inextricably' with the commercial arrangement that it proposes . . . so the State's interest in regulating the underlying transaction may give it a concomitant interest in the expression itself." Edenfield, 507 U.S. at ___,113 S.Ct. 1792, 123 L.Ed.2d at 552-53 (citing Friedman v. Rogers,440 U.S. 1, 10, n. 9, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979)). In this regard, the case of Posadas de Puerto Rico Associates v. Tourism Company of Puerto Rico, 478 U.S. 328, 106 S.Ct. 2968,92 L.Ed.2d 266 (1986) is of particular importance. In that case, the Supreme Court addressed the issue of whether Puerto Rican restrictions on advertising by legal gambling casinos impermissibly suppressed commercial speech in violation of theFirst Amendment. A summary of the facts of the case are set forth below.
In 1948, the Puerto Rico Legislature legalized certain forms of casino gambling in order to promote tourism but prohibited the casinos from advertising or otherwise offering their facilities to the people of Puerto Rico. A hotel with a casino had been fined for violating the advertising regulations and filed suit, alleging that the casino advertising prohibitions, both facially and as applied, violated the First Amendment. At the lower level, the superior court issued a narrowing construction of the Puerto Rico statute prohibiting advertising by stating, in part, that the legislature had intended to allow advertising addressed to tourists within Puerto Rico, even though the advertising might incidentally reach the citizens of Puerto Rico. In light of this construction, the lower court held that the hotel's constitutional rights had been violated by past application of the advertising restrictions, but that the restrictions were not facially unconstitutional. In reviewing the restrictions on advertising, the United States Supreme Court utilized the four-part test identified in Central Hudson and stated:
 The particular kind of commercial speech at issue here, namely, advertising of casino gambling aimed at the residents of Puerto Rico, concerns a lawful activity and is not misleading or fraudulent, at least in the abstract. We must therefore proceed to the three remaining steps of the Central Hudson analysis in order to determine whether Puerto Rico's advertising restrictions run afoul of the First Amendment. The first of these three steps involves an assessment of the strength of the government's interest in restricting the speech. The interest at stake in this case, as determined by the Superior Court, is the reduction of demand for casino gambling by the residents of Puerto Rico. . . . The Tourism Company's brief before this Court explains the legislature's belief that "[e]xcessive casino gambling among local residents . . . would produce serious harmful effects on the health, safety and welfare of the Puerto Rican citizens. . . These are some of the very same concerns, of course, that have motivated the vast majority of the 50 States to prohibit casino gambling. We have no difficulty in concluding that the Puerto Rico Legislature's interest in the health, safety, and welfare of its citizens constitutes a "substantial" governmental interest. . . .
 The last two steps of the Central Hudson analysis basically involve a consideration of the "fit" between the legislature's ends and the means chosen to accomplish those ends. Step three asks the question whether the challenged restrictions on commercial speech "directly advance" the government's asserted interest. In the instant case, the answer to this question is clearly "yes." The Puerto Rico Legislature obviously believed, when it enacted the advertising restrictions at issue here, that advertising of casino gambling aimed at the residents of Puerto Rico would serve to increase the demand for the product advertised. We think the legislature's belief is a reasonable one, and the fact that appellant has chosen to litigate this case all the way to this Court indicates that appellant shares the legislature's view. . . .
* * *
 We also think it clear beyond per-adventure that the challenged statute and regulations satisfy the fourth and last step of the Central Hudson analysis, namely, whether the restrictions on commercial speech are no more extensive than necessary to serve the government's interest.
Posadas de Puerto Rico Associates v. Tourism Company of Puerto Rico, 478 U.S. 328, 340-43, 106 S.Ct. 2968, 92 L.Ed.2d 266
(1986).
Thus, the Supreme court held that, under the Central Hudson test, the advertising restrictions at issue in Posadas did not facially violate the First Amendment. One other point with respect to the Posadas case that is important to note is an argument which was raised by the appellant and rejected by the Court and which concerned the Court's decision in Bigelow v. Virginia, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). At issue in Bigelow was whether the State of Virginia could prohibit advertisements in its state of an abortion clinic located in New York City. The appellant, managing editor of a weekly newspaper published in Virginia, as the result of publishing a New York organization's advertisement about abortion services, was convicted of violating a Virginia statute that made it a misdemeanor to encourage or prompt the procuring of an abortion by the sale or circulation of any publication. In reversing a criminal conviction based on the advertisement, the Court held that, while a state has a legitimate interest in protecting the welfare of its citizens as they venture outside the state's borders, a state cannot further those interests by suppressing truthful, nonmisleading information regarding a legal activity in another state. In this regard the Court opined that a state "may not, under the guise of exercising internal police powers, bar a citizen of another State from disseminating information about an activity that is legal in that State." Bigelow v. Virginia,421 U.S. at 824-25. The appellant in Posadas also cited the case of Carey v. Population Services International, 431 U.S. 678,97 S.Ct. 2010, 52 L.Ed.2d 675 (1977), in which the Supreme Court struck down a ban on any advertisement or display of contraceptives. In rejecting appellant's arguments with regard to Bigelow and Carey, the Court in Posadas stated:
 We think appellant's argument ignores a crucial distinction between the Carey and Bigelow decisions and the instant case. In Carey and Bigelow, the underlying conduct that was the subject of the advertising restrictions was constitutionally protected and could not have been prohibited by the State. Here, on the other hand, the Puerto Rico Legislature surely could have prohibited casino gambling by the residents of Puerto Rico altogether. In our view, the greater power to completely ban casino gambling necessarily includes the lesser power to ban advertising of casino gambling, and Carey and Bigelow are hence inapposite.
Posadas de Puerto Rico Associates v. Tourism Company of Puerto Rico, 478 U.S. 328, 345-46, 106 S.Ct. 2968, 92 L.Ed.2d 266
(1986). Based on the language in Posadas, it is my opinion that a bill which would prohibit advertisements of all forms of gambling, including those forms which are legal in the State of Arkansas, could in all likelihood withstand constitutional scrutiny.
Finally, two federal statutes, 18 U.S.C. §§ 1304 and 1307, should be mentioned, as they relate to advertising restrictions on radio and television stations. These statutes have the practical effect of prohibiting the broadcast of lottery advertising by a broadcaster licensed to a state that does not allow lotteries, while allowing such broadcasting by a broadcaster licensed to a state that sponsors a lottery.[2] I include these provisions, for as stated earlier, I am not sure whether your use of the term "gambling" includes all forms of gambling, including lotteries. If your use of the term includes lotteries, it appears that 18 U.S.C. §§ 1304 and 1307
already prohibit radio and television stations which are licensed to Arkansas (a state that does not allow lotteries) from running advertisements for out-of-state lotteries.[3]
The United States Supreme Court has recently held that these statutes, as applied, regulate commercial speech in a manner consistent with the First Amendment. See United States v. Edge Broadcasting Co., 509 U.S. ___, 113 S.Ct. 2696, 125 L.Ed.2d 345
(1993).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely, WINSTON BRYANT Attorney General
WB:cyh
[1] I assume that you are referring to casino gambling establishments which have recently opened in a neighboring state. Accordingly, I am unclear as to whether the term "gambling," as appears in your question, refers only to casino gambling or to all forms of gambling, including lotteries.
[2] See also 18 U.S.C. § 1302 regarding prohibitions on depositing in the mail or sending or delivering by mail any newspaper or publication of any kind which contains advertisements of "any lottery, gift enterprise, or scheme of any kind offering prizes dependent in whole or in part upon lot or chance . . ." and 18 U.S.C. § 1307(a)(1)(A), providing for an exception to 1302 in that a newspaper may advertise state-run lotteries if the newspaper is published in a state which conducts a state-run lottery.
[3] This office has opined in previous attorney general's opinions that there are no Arkansas laws which would prohibit the advertisement in Arkansas of lotteries or gaming activities which are lawful where conducted. See Op. Att'y Gen. Nos.93-411, 91-006, 90-240, and 86-40. Thus, those opinions were limited to state law, and it was emphasized that reference should be made to all applicable federal laws and FCC regulations.