Cowin, J.
Plaintiff Massachusetts Cannabis Reform Coalition (the “Coalition”) has commenced this action against the Town of Ashland (“Ashland”) seeking declaratory and injunctive relief under 42 U.S.C. §1983. The Coalition alleges that Ashland promulgated a new park permit regulation (“the regulation”) which violates the plaintiffs’ constitutional rights to free speech and assembly. Both sides have filed motions for summary judgment.
For the reasons discussed below, summary judgment is granted in favor of the plaintiffs.
BACKGROUND
Based on the parties’ submissions, the following facts are undisputed. The Coalition is a non-profit corporation dedicated to the reform or repeal of laws penalizing the possession and use of marijuana. On May 10, 1993, plaintiff James Pillsbury (“Pillsbury”), on behalf of the Coalition, applied for and was granted a permit to hold an event in Stone Park, Ashland, Massachusetts (“Stone Park”). Stone Park is a public park which contains a playground for children and a small pavilion. The pavilion is available for public use upon application and payment of a fee.
The Coalition held an event on May 22, 1993 at which there were a number of speeches. Two Ashland police officers and a town selectman, Barry Bresnick (“Bresnick”), observed several attendees smoking what appeared to be marijuana.[3] There is no evidence that any arrests were made.
On May 27,1993, the Coalition event was discussed at a meeting of the Town of Ashland Board of Selectmen (the “Board”). The meeting was televised on a local cable station and the Court was provided with a transcript of the meeting.[4] During the course of the discussion, several comments were made regarding *439 the Coalition event. One Selectman asked: “Can we have a policy, develop a policy where we could keep individuals or groups [from] extolling illegal activities ... we don’t want inappropriate things going on next to a playground.” Another Selectman asked: “How do we get to the point where we do the best we can to eliminate inappropriate activities?” In the context of the same discussion, it was suggested that the Stone Park permit regulations could be changed to limit use by non-residents of Ashland. It was agreed that town counsel would be consulted regarding the proper wording of such a regulation.
On June 7, 1993, Pillsbury, on behalf of the Coalition, again applied for a permit to use Stone Park on July 5, 1993. Pillsbury was told that Silvio Baruzzi (“Baruzzi”), the Ashland Public Services Director, would be the person to approve the application and that the decision would be made within a couple of days. On June 9, 1993, Pillsbury called to inquire about the status of his application. Baruzzi informed Pillsbury that the town was considering changing the rules for use of the park by non-residents. Baruzzi denied Pillsbury’s application by letter dated June 14, 1993. The letter stated that Ashland had adopted a new park permit regulation limiting the use of Stone Park by non-resident organizations to one time per year.[5]
Affidavits submitted by the defendants add two other facts regarding the park permits, which facts I assume to be true for the purposes of this decision. In his affidavit, Baruzzi stated that Pillsbury’s June 7, 1993 request was the first time a non-resident organization sought to use a park building on multiple occasions during the same year. In another affidavit, the Town Manager, Paul Sharon (“Sharon”), stated that prior to May, 1993, the town had a “de facto” policy that non-residents could not use Stone Park more than once in a given year.
On June 30, 1993, plaintiffs brought this action pursuant to 42 U.S.C. §1983. On July 1, 1993, this Court (Spurlock, J.) granted plaintiffs’ motion for a preliminary injunction ordering Ashland to refrain from interfering in any way with the Coalition’s July 5, 1993 event. After an unsuccessful appeal to a single justice of the Appeals Court, the town complied with the Court’s decision and allowed the Coalition to use the pavilion on July 5, 1993.
The Coalition now seeks to enjoin Ashland permanently from enforcing the new park permit regulations. The plaintiffs also seek declaratory judgment, costs and reasonable attorneys fees.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgment as a matter of law. Cassesso; supra at 422.
In examining the constitutionality of the regulation, the Court notes at the outset that the regulation is a prior restraint on speech. Therefore, the regulation “comes to this Court with a heavy presumption against its constitutionality.” Ku Klux Klan v. Martin Luther King Worshippers, 735 F.Supp. 745, 748 (M.D.Tenn. 1990), quoting Organization for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971).
In a traditional public forum such as a public park, only the narrowest kind of regulation is permitted. See Hague v. Committee for Industrial Organization, 307 U.S. 496, 515 (1938) (“[wjherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions”). In such a public forum, time, place and manner restrictions will be upheld only if they are content neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. Clark v. Community for Creative Nonviolence, 468 U.S. 288, 293 (1984).
“The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.” Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). Regulation of speech is “content neutral so long as it is ‘justified without reference to the content of the regulated speech.’ ” Id. at 791, quoting Clark v. Community for Creative Nonviolence, supra at 295. The principal justifications advanced by Ashland for the new regulation is the town’s desire to preserve the park for use by Ashland residents and children living in the surrounding neighborhood. Assuming for the purposes of summary judgment that these were the motivating purposes for the regulation, the requirement of content neutrality is satisfied.[6]
In addition to content neutrality, the regulation must be narrowly tailored to serve a significant government interest. The regulation need not be the least restrictive or least intrusive means of accomplishing the town’s content-neutral purpose. Ward v. Rock Against Racism, 491 U.S. 781, 798 (1989). “Rather, the requirement of narrow tailoring is satisfied ‘so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.’ ” Id. at 491 (emphasis added). The government may not “burden substantially more *440 speech than is necessary to further [its] interests,” nor may it “regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.” Id.
As a matter of law, Ashland has not shown that the regulation is narrowly tailored to further its interests in preserving the park for use by town residents and neighborhood children. There is no evidence that use of the park by non-residents resulted in residents being turned away or in children being unable to utilize the playground. In fact, the Public Services Director stated that the Coalition was the first nonresident organization that ever sought to use the park on multiple occasions during the same year. Given this fact, Ashland has not shown that its interest in preserving the park for resident use was achieved less effectively absent the regulation. Furthermore, the restriction burdens substantially more speech than is necessary to further the town’s stated interests. There is no evidence that demand upon the park facilities was sufficiently excessive to justify such an extreme limitation upon its access. See Ku Klux Klan v. Martin Luther King Worshippers, 735 F.Supp. 745, 752 (M.D.Tenn. 1990) (no legitimate basis for city ordinance restricting parade permits to one time per month in absence of evidence of high demand upon the public streets). Ashland may not restrict speech on the mere theoretical possibility that non-resident use of the park facilities may limit resident use at some future point.
Finally, to constitute a permissible time, place and manner restriction, the regulation must leave open ample alternative channels of communication. The town has argued that the regulation is permissible because the Coalition is free to use other public parks for its events. However, traditional public forums such as streets and parks are “proper places for the dissemination of information and opinion!,] and one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.” Schneider v. Irvington, 308 U.S. 147, 163 (1939).
As a matter of law, Ashland has not shown that the regulation is narrowly tailored to serve a significant government interest. Accordingly, the Court finds that the regulation is unconstitutional as violative of the First Amendment of the U.S. Constitution, applicable to the states through the Fourteenth Amendment.[7]
The plaintiffs seek attorneys fees pursuant to 42 U.S.C. §1988. Section 1988 authorizes a court, in its discretion, to award attorneys fees to the prevailing party in any action to enforce a provision of 42 U.S.C. §1983. “Ordinarily, a prevailing party should recover attorneys fees absent special circumstances.” Globe Newspaper Co. v. Commissioner of Revenue, 410 Mass. 188, 197 (1991). The fact that taxpayers will bear the cost of the fees is not a “special circumstance” justifying the denial of the plaintiffs’ request. Id. at 197. On this record, the plaintiffs should be allowed reasonable attorneys fees. The plaintiffs are also entitled to their statutory costs.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion for summary judgment is DENIED. It is further ORDERED that the plaintiffs’ motion is ALLOWED. It is further ORDERED that a declaration enter declaring that the Town of Ashland’s regulation restricting use of Stone Park facilities by non-residents to one time per year is unconstitutional as violative of the First Amendment of the U.S. Constitution, applicable to the states through the Fourteenth Amendment.
Plaintiffs are to file an affidavit(s) of fees and costs within twenty (20) days of receipt of this order. Said affidavit is to contain an itemization of all hours spent on this case and the reasons for such expenditures of time as well as the hourly rate of the attorneys. Defendants if they wish, may file a counter affidavit and/or memorandum in opposition within fifteen (15) days of the filing of plaintiffs’ affidavit(s).

fyhe plaintiffs do not affirm or dispute this fact, but argue that none of these individuals were shown to be associated with the Coalition. For the purposes of summary judgment only, the Court accepts the defendants’ version of events as true. However, the activities of the audience do not constitute grounds to restrain the Coalition’s speech.

hjie parties have stipulated to the transcript’s authenticity.

The regulation provides: “Non-resident organizations will be limited to use of pavilion or gazebo once per year.” Stone Park Rules & Regulations, #6.

In making this assumption and reviewing the regulation as a content-neutral time, place and manner restriction, the Court is not suggesting that the Coalition’s claim that the regulation was in fact content-based — enacted with the intent and purpose to restrain the plaintiffs' speech — is without merit. It is well settled that “regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment.” City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46-47 (1986). On the record before the Court, the Coalition has shown that the timing and sequence of events in this case certainly raises suspicion about the purpose behind the passage of the regulation. Prior to the first Coalition event, there was no written policy regarding frequency of use by non-residents. (The town has stated that it had a “de facto” policy regarding non-resident use. However, it is questionable why such a policy against multiple use by non-residents would exist when the town had never before received such a request.) The subject of the regulation was openly discussed at a meeting when selectmen raised concerns about the Coalition event. The regulation was also officially put into place within a week of the Coalition’s application for a second permit. Finally, the regulation applies to only one of Ashland’s several public parks. There is a clear suggestion that the rule was passed in response to the Coalition’s May, 1993 event. The reasonable inference firom the undisputed facts is that the regulation was adopted to restrain the Coalition’s speech. As stated earlier, *441 at this stage in the proceedings, the Court will assume that the regulation was justified without reference to the content of the regulated speech and is therefore content-neutral.

Based on this Court’s finding, it is unnecessary to address the plaintiffs’ other arguments that the one year/one use rule violates the Massachusetts Declaration of Rights and impermissibly discriminates against non-residents in favor of residents in violation of the equal protection clause of the Fourteenth Amendment.