SCHNEIDER *v.* STATE (TOWN OF IRVINGTON).*

No. 11. Argued October 13, 16, 1939.—Decided November 22, 1939.

---

[8] *National Labor Relations Board* v. *Fainblatt*, 306 U. S. 601, 606.

* Together with No. 13, *Kim Young* v. *California,* on appeal from the Appellate Department of the Superior Court of Los Angeles County, California; No. 18, *Snyder* v. *Milwaukee,* certiorari to the Supreme Court of Wisconsin; and No. 29, *Nichols et al.* v. *Massachusetts,* on appeal from the Superior Court of Worcester County Massachusetts.

148

*Mr. Joseph F. Rutherford,* with whom *Mr. Hayden C. Covington* was on the brief, for petitioner in No. 11.

*Mr. Robert I. Morris* argued the cause, and *Messrs. Meyer Q. Kessel* and *Joseph C. Braelow* were on the brief, for respondent in No. 11.

*Mr. Osmond K. Fraenkel,* with whom *Carol King* and *Mr. A. L. Wirin* were on the brief, for appellant in No. 13.

*Messrs. Ray L. Chesebro, Frederick Von Schrader, Leon T. David, John L. Bland,* and *Bourke Jones* submitted for appellee in No. 13.

150

152

*Mr. A. W. Richter,* with whom *Mr. Osmond K. Fraenkel* was on the brief, for petitioner in No. 18.

*Mr. Carl F. Zeidler* argued the cause, and *Mr. Walter J. Mattison* was on the brief, for respondent in No. 18.

*Messrs. Sidney S. Grant* and *Osmond K. Fraenkel* for appellants in No. 29.

*Mr. Edward O. Proctor,* Assistant Attorney General of Massachusetts, with whom *Mr. Paul A. Dever,* Attorney General, was on the brief, for appellee in No. 29.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

Four cases are here, each of which presents the question whether regulations embodied in a municipal ordinance

abridge the freedom of speech and of the press secured against state invasion by the Fourteenth Amendment of the Constitution.[1]

## No. 13.

The Municipal Code of the City of Los Angeles, 1936, provides:

"Sec. 28.00. 'Hand-Bill' shall mean any hand-bill, dodger, commercial advertising circular, folder, booklet, letter, card, pamphlet, sheet, poster, sticker, banner, notice or other written, printed or painted matter calculated to attract attention of the public."

. "Sec. 28.01. No person shall distribute any hand-bill to or among pedestrians along or upon any street, sidewalk or park, or to passengers on any street car, or throw, place or attach any hand-bill in, to, or upon any automobile or other vehicle."

The appellant was charged in the Municipal Court with a violation of § 28.01. Upon his trial it was proved that he distributed handbills to pedestrians on a public sidewalk and had more than three hundred in his possession for that purpose. Judgment of conviction was entered and sentence imposed. The Superior Court of Los Angeles County affirmed the judgment.[2] That court being the highest court in the State authorized to pass upon such a case, an appeal to this court was allowed.

The handbill which the appellant was distributing bore a notice of a meeting to be held under the auspices of "Friends Lincoln Brigade" at which speakers would discuss the war in Spain.

The court below sustained the validity of the ordinance on the ground that experience shows littering of the

---

[1] On account of the importance of the question we granted certiorari in two of the cases, and noted jurisdiction in the others.

[2] 33 Cal. App. 2d 747; 85 P. 2d 231.

streets results from the indiscriminate distribution of handbills.[3] It held that the right of free expression is not absolute but subject to reasonable regulation and that the ordinance does not transgress the bounds of reasonableness. *Lovell* v. *City of Griffin*, 303 U. S. 444, was distinguished on the ground that the ordinance there in question prohibited distribution anywhere within the city while the one involved forbids distribution in a very limited number of places.

### No. 18.

An ordinance of the City of Milwaukee, Wisconsin, provides: "It is hereby made unlawful for any person . . . to . . . throw . . . paper . . . or to circulate or distribute any circular, hand-bills, cards, posters, dodgers, or other printed or advertising matter . . . in or upon any sidewalk, street, alley, wharf, boat landing, dock or other public place, park or ground within the City of Milwaukee. . . "

The petitioner, who was acting as a picket, stood in the street in front of a meat market and distributed to passing pedestrians hand-bills which pertained to a labor dispute with the meat market, set forth the position of organized labor with respect to the market, and asked citizens to refrain from patronizing it. Some of the bills were thrown in the street by the persons to whom they were given and it resulted that many of the papers lay in the gutter and in the street. The police officers who arrested the petitioner and charged him with a violation

---

[3] On the hand-bill were the words "Admission 25¢ and 50¢." The Superior Court adverted to these and said: "Whatever traffic in ideas the Friends Lincoln Brigade may have planned for the meeting, the cards themselves seem to fall within the classification of commercial advertising rather than the expression of one's views. But if this be so, our conclusion is not thereby changed."

of the ordinance did not arrest any of those who received the bills and threw them away. The testimony was that the action of the officers accorded with a policy of the police department in enforcement of the ordinance to the effect that, when such distribution resulted in littering of the streets the one who was the cause of the littering, that is, he who passed out the bills, was arrested rather than those who received them and afterwards threw them away. The Milwaukee County court found the petitioner guilty and fined him. On appeal the judgment was affirmed by the Supreme Court.[4]

The court held that the purpose of the ordinance was to prevent an unsightly, untidy, and offensive condition of the sidewalks. It distinguished *Lovell* v. *City of Griffin, supra,* on the ground that the ordinance there considered manifestly was not aimed at prevention of littering of the streets. The court approved the administrative construction of the ordinance by the police officials and felt that this construction sustained its validity. The court said: "Unless and until delivery of the hand-bills was shown to result in a littering of the streets their distribution was not interfered with."

---

## No. 29.

An ordinance of the City of Worcester, Massachusetts, provides: "No person shall distribute in, or place upon any street or way, any placard, handbill, flyer, poster, advertisement or paper of any description. . . ."

The appellants distributed in a street leaflets announcing a protest meeting in connection with the administration of state unemployment insurance. They did not throw any of the leaflets on the sidewalk or scatter them.

---

[4] 230 Wis. 131; 283 N. W. 301.

Some of those to whom the leaflets were handed threw them on the sidewalk and the street, with the result that some thirty were lying about.

The appellants were arrested and charged with a violation of the ordinance. The Superior Court of Worcester County rendered a judgment of conviction and imposed sentence. The Supreme Judicial Court overruled exceptions.[5] That court held the ordinance a valid regulation of the use of the streets and sought thus to distinguish it from the one involved in *Lovell* v. *City of Griffin, supra,* which the court said was not such a regulation. Referring to the ordinance the court said: "It interferes in no way with the publication of anything in the city of Worcester, except only that it excludes the public streets and ways from the places available for free distribution. It leaves open for such distribution all other places in the city, public and private."

---

## No. 11.

An ordinance of the Town of Irvington, New Jersey, provides: "No person except as in this ordinance provided shall canvass, solicit, distribute circulars, or other matter, or call from house to house in the Town of Irvington without first having reported to and received a written permit from the Chief of Police or the officer in charge of Police Headquarters." It further enacts that a permit to canvass shall specify the number of hours or days it will be in effect; that the canvasser must make an application giving his name, address, age, height, weight, place of birth, whether or not previously arrested or convicted of crime, by whom employed, address of employer, clothing worn, and description of project for which he is can-

---

[5] Mass. Adv. 1938, 1969; 18 N. E. 2d 166.

vassing; that each applicant shall be fingerprinted and photographed; that the Chief of Police shall refuse a permit in all cases where the application, or further investigation made at the officer's discretion, shows that the canvasser is not of good character or is canvassing for a project not free from fraud; that canvassing may only be done between 9 A. M. and 5 P. M.; that the canvasser must furnish a photograph of himself which is to be attached to the permit; that the permittee must exhibit the permit to any police officer or other person upon request, must be courteous to all persons in canvassing, must not importune or annoy the town's inhabitants or conduct himself in an unlawful manner and must, at the expiration of the permit, surrender it at police headquarters. Persons delivering goods, merchandise, or other articles in the regular course of business to the premises of persons ordering, or entitled to receive the same, are exempted from the operation of the ordinance. Violation is punishable by fine or imprisonment.

The petitioner was arrested and charged with canvassing without a permit. The proofs show that she is a member of the Watch Tower Bible and Tract Society and, as such, certified by the society to be one of "Jehovah's Witnesses." In this capacity she called from house to house in the town at all hours of the day and night and showed to the occupants a so-called testimony and identification card signed by the society. The card stated that she would leave some booklets discussing problems affecting the person interviewed; and that, by contributing a small sum, that person would make possible the printing of more booklets which could be placed in the hands of others. The card certified that the petitioner was an ordained minister sent forth by the society, which is organized to preach the gospel of God's kingdom, and cited passages from the Bible with respect to the obligation so to preach. The petitioner left, or

offered to leave, the books or booklets with the occupants of the houses visited. She did not apply for, or obtain, a permit pursuant to the ordinance because she conscientiously believed that so to do would be an act of disobedience to the command of Almighty God.

The petitioner was convicted in the Recorder's Court. The Court of Common Pleas affirmed the judgment. On a further appeal the Supreme Court affirmed.[6] The Court of Errors and Appeals affirmed the judgment of the Supreme Court.[7]

The Supreme Court held that the petitioner's conduct amounted to the solicitation and acceptance of money contributions without a permit, and held the ordinance prohibiting such action a valid regulation, aimed at protecting occupants and others from disturbance and annoyance and preventing unknown strangers from visiting houses by day and night. It overruled the petitioner's contention that the measure denies or unreasonably restricts freedom of speech or freedom of the press. The Court of Errors and Appeals thought *Lovell* v. *City of Griffin, supra,* not controlling, since the ordinance in that case prohibited all distribution of printed matter and was not limited to ways which might be regarded as consistent with the maintenance of public order or as involving disorderly conduct, molestation of inhabitants, or misuse or littering of the streets, whereas the ordinance here involved is aimed at canvassing or soliciting, subjects not embraced in that condemned in the *Lovell* case. The court said: "A municipality may protect its citizens against fraudulent solicitation and, when it enacts an ordinance to do so, all persons are required to abide thereby. The ordinance in question was evidently designed for that purpose . . ."

---

[6] 120 N. J. Law 460; 200 A. 799.

[7] 121 N. J. Law 542; 3 A. 2d 609.

The freedom of speech and of the press secured by the First Amendment against abridgment by the United States is similarly secured to all persons by the Fourteenth against abridgment by a state.[8]

Although a municipality may enact regulations in the interest of the public safety, health, welfare or convenience, these may not abridge the individual liberties secured by the Constitution to those who wish to speak, write, print or circulate information or opinion.

Municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated. So long as legislation to this end does not abridge the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regulate the conduct of those using the streets. For example, a person could not exercise this liberty by taking his stand in the middle of a crowded street, contrary to traffic regulations, and maintain his position to the stoppage of all traffic; a group of distributors could not insist upon a constitutional right to form a cordon across the street and to allow no pedestrian to pass who did not accept a tendered leaflet; nor does the guarantee of freedom of speech or of the press deprive a municipality of power to enact regulations against

[8] *Gitlow* v. *New York*, 268 U. S. 652; *Whitney* v. *California*, 274 U. S. 357; *Stromberg* v. *California*, 283 U. S. 359; *Grosjean* v. *American Press Co.*, 297 U. S. 233; *DeJonge* v. *Oregon*, 299 U. S. 353; *Herndon* v. *Lowry*, 301 U. S. 242; *Lovell* v. *City of Griffin*, 303 U. S. 444. There is no averment or proof in any of the cases that the appellants or petitioners are citizens of the United States, and in the *Young* case, No. 13, the applicable provisions of the municipal code were challenged on the sole ground that they infringed the due process clause of the Fourteenth Amendment. Cf. *New York ex rel. Cohn* v. *Graves*, 300 U. S. 308, 317; *Northwestern Bell Telephone Co.* v. *Nebraska State Ry. Comm'n*, 297 U. S. 471 at 473.

throwing literature broadcast in the streets. Prohibition of such conduct would not abridge the constitutional liberty since such activity bears no necessary relationship to the freedom to speak, write, print or distribute information or opinion.

This court has characterized the freedom of speech and that of the press as fundamental personal rights and liberties.[9] The phrase is not an empty one and was not lightly used. It reflects the belief of the framers of the Constitution that exercise of the rights lies at the foundation of free government by free men. It stresses, as do many opinions of this court, the importance of preventing the restriction of enjoyment of these liberties.

In every case, therefore, where legislative abridgment of the rights is asserted, the courts should be astute to examine the effect of the challenged legislation. Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions. And so, as cases arise, the delicate and difficult task falls upon the courts to weigh the circumstances and to appraise the substantiality of the reasons advanced in support of the regulation of the free enjoyment of the rights.

In *Lovell* v. *City of Griffin, supra,* this court held void an ordinance which forbade the distribution by hand or otherwise of literature of any kind without written permission from the city manager. The opinion pointed out that the ordinance was not limited to obscene and immoral literature or that which advocated unlawful conduct, placed no limit on the privilege of distribution in the interest of public order, was not aimed to prevent molestation of inhabitants or misuse or littering of

[9] *Grosjean* v. *American Press Co., supra,* p. 244; *DeJonge* v. *Oregon, supra,* p. 364; *Lovell* v. *City of Griffin, supra,* p. 450.

streets, and was without limitation as to time or place of distribution. The court said that, whatever the motive, the ordinance was bad because it imposed penalties for the distribution of pamphlets, which had become historical weapons in the defense of liberty, by subjecting such distribution to license and censorship; and that the ordinance was void on its face, because it abridged the freedom of the press. Similarly in *Hague* v. *C. I. O.*, 307 U. S. 496, an ordinance was held void on its face because it provided for previous administrative censorship of the exercise of the right of speech and assembly in appropriate public places.

The Los Angeles, the Milwaukee, and the Worcester ordinances under review do not purport to license distribution but all of them absolutely prohibit it in the streets and, one of them, in other public places as well.

The motive of the legislation under attack in Numbers 13, 18, and 29 is held by the courts below to be the prevention of littering of the streets and, although the alleged offenders were not charged with themselves scattering paper in the streets, their convictions were sustained upon the theory that distribution by them encouraged or resulted in such littering. We are of opinion that the purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it. Any burden imposed upon the city authorities in cleaning and caring for the streets as an indirect consequence of such distribution results from the constitutional protection of the freedom of speech and press. This constitutional protection does not deprive a city of all power to prevent street littering. There are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the streets.

It is argued that the circumstance that in the actual enforcement of the Milwaukee ordinance the distributor is arrested only if those who receive the literature throw it in the streets, renders it valid. But, even as thus construed, the ordinance cannot be enforced without unconstitutionally abridging the liberty of free speech. As we have pointed out, the public convenience in respect of cleanliness of the streets does not justify an exertion of the police power which invades the free communication of information and opinion secured by the Constitution.

It is suggested that the Los Angeles and Worcester ordinances are valid because their operation is limited to streets and alleys and leaves persons free to distribute printed matter in other public places. But, as we have said, the streets are natural and proper places for the dissemination of information and opinion; and one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.

While it affects others, the Irvington ordinance drawn in question in No. 11, as construed below, affects all those, who, like the petitioner, desire to impart information and opinion to citizens at their homes. If it covers the petitioner's activities it equally applies to one who wishes to present his views on political, social or economic questions. The ordinance is not limited to those who canvass for private profit; nor is it merely the common type of ordinance requiring some form of registration or license of hawkers, or peddlers. It is not a general ordinance to prohibit trespassing. It bans unlicensed communication of any views or the advocacy of any cause from door to door, and permits canvassing only subject to the power of a police officer to determine, as a censor, what literature may be distributed from house to house and who may distribute it. The applicant must submit to that

officer's judgment evidence as to his good character and as to the absence of fraud in the "project" he proposes to promote or the literature he intends to distribute, and must undergo a burdensome and inquisitorial examination, including photographing and fingerprinting. In the end, his liberty to communicate with the residents of the town at their homes depends upon the exercise of the officer's discretion.

As said in *Lovell* v. *City of Griffin, supra,* pamphlets have proved most effective instruments in the dissemination of opinion. And perhaps the most effective way of bringing them to the notice of individuals is their distribution at the homes of the people. On this method of communication the ordinance imposes censorship, abuse of which engendered the struggle in England which eventuated in the establishment of the doctrine of the freedom of the press embodied in our Constitution. To require a censorship through license which makes impossible the free and unhampered distribution of pamphlets strikes at the very heart of the constitutional guarantees.

Conceding that fraudulent appeals may be made in the name of charity and religion, we hold a municipality cannot, for this reason, require all who wish to disseminate ideas to present them first to police authorities for their consideration and approval, with a discretion in the police to say some ideas may, while others may not, be carried to the homes of citizens; some persons may, while others may not, disseminate information from house to house. Frauds may be denounced as offenses and punished by law. Trespasses may similarly be forbidden. If it is said that these means are less efficient and convenient than bestowal of power on police authorities to decide what information may be disseminated from house to house, and who may impart the information, the answer is that considerations of this sort do not empower a municipality to abridge freedom of speech and press.

We are not to be taken as holding that commercial soliciting and canvassing may not be subjected to such regulation as the ordinance requires. Nor do we hold that the town may not fix reasonable hours when canvassing may be done by persons having such objects as the petitioner. Doubtless there are other features of such activities which may be regulated in the public interest without prior licensing or other invasion of constitutional liberty. We do hold, however, that the ordinance in question, as applied to the petitioner's conduct, is void, and she cannot be punished for acting without a permit.

The judgment in each case is reversed and the causes are remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE MCREYNOLDS is of opinion that the judgment in each case should be affirmed.