S92A1170. STONE MOUNTAIN MEMORIAL ASSOCIATION v.
ZAUBER.
(424 SE2d 279)

CLARKE, Chief Justice.

We consider here the validity of the restrictions imposed by the Stone Mountain Memorial Association on the distribution of leaflets within the Park. The trial court held that the regulations adopted by appellant were an unconstitutional restriction on appellee's right to free speech. We affirm.

Appellant Stone Mountain Memorial Association ("Association") is the administrative body managing the state-owned Stone Mountain Park ("the Park"). The Park covers 3,200 acres, offering a variety of natural and constructed attractions. Its two gates are open to the public from 6:00 a.m. to midnight without charge, except a small parking fee for automobiles. In addition to the public areas, there are commercial facilities in the Park such as lodging facilities, restaurants, and a water park. The Association estimates that 6.5 million people visit the park every year. The Park hosts several public events each year including Easter church services, a folk art festival, and the Scottish Highland Games.

Appellee David Zauber is a pastor of a religious congregation and a representative of Jewish Believers in Jesus. One of Zauber's evangelistic activities is the distribution of religious literature in public areas. He wants to distribute leaflets at the Park; however, the Association had adopted regulations prohibiting leafleting in the Park.[1] Zauber challenged Ordinance § 6-104 under 42 USC § 1983 in the Superior Court of DeKalb County seeking declaratory and injunctive relief. The trial court granted a temporary restraining order against enforcement of the ban on leafleting. The Association then amended the Ordinance.[2]

---

[1] Under its original form, Ordinance § 6-104 prohibited the distribution of all literature within the park except that describing authorized park activities.

[2] After the trial court issued the restraining order, the Association amended Ordinance § 6-104. The amended ordinance requires the leafleteer to obtain a permit from the general manager by submitting an application seven days in advance. The ordinance provides:

(4) Upon receipt of an application containing the required information and provided

1. Leafleting is an expressive activity protected under the United States Constitution. *United States v. Grace*, 461 U. S. 171, 176-177 (103 SC 1702, 75 LE2d 736) (1983).

2. Under the forum-based analysis developed in *Lehman v. City of Shaker Heights*, 418 U. S. 298 (94 SC 2714, 41 LE2d 770) (1974) the first inquiry is to determine the type of forum to which the citizen seeks access. *Cornelius v. NAACP Legal Defense &c. Fund*, 473 U. S 788, 801 (105 SC 3439, 87 LE2d 567) (1985).

Public parks are the quintessential public fora. Parks and streets

> have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. *Hague v. C.I.O.*, 307 U. S. 496, 515 (59 SC 954, 83 LE 1423) (1939).

The history of the Park shows that it is a traditional public forum Public areas, where people are free to meet and discuss the issues of the day, are open to all at no charge. In addition, the Park hosts many group events open to the public, from Easter sunrise services to folk festivals.

The sidewalks and streets of the Park, as well as other areas open to the public without charge, are traditional public fora. In such places, government regulations of speech must be narrowly drawn to achieve a compelling state interest. *International Society for Krishna Consciousness v. Lee*, 60 USLW 4749, 5751, ____ U. S. ____ (112 SC 2701, 2705, 120 LE2d 541), *concurring opinion at* 112 SC 2711 (1992). The government may, however, impose reasonable time, place, and manner regulations if "the restrictions 'are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.' " *United States v. Grace*, 461 U. S. 171, 177 (103 SC 1702, 75 LE2d 736) (1983) (quoting *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U. S. 37, 45 (103 SC 948, 74 LE2d 794) (1983)).

We hold the Association has fashioned its restrictions too

---

the applicant meets all other requirements herein, the general manager shall issue a permit to the applicant if there is space available at the designated distribution areas unless:

(a) It reasonably appears that the distribution will present a clear and present danger to the public health and safety; or

(b) The number of persons desiring to engage in the distribution exceeds the number of persons which can be accommodated in the particular location as provided in paragraph 10 of this ordinance;

(c) The activity would constitute a violation of an applicable law or regulation.

After a trial on the merits, the trial court declared the amended ordinance unconstitutional and permanently enjoined its enforcement.

broadly. Ordinance § 6-104 prohibits the distribution of literature anywhere in the Park except at one of two specified booths and limits the number of leafleteers to four at each booth. The leafleteer must first get a permit at least seven days in advance to distribute leaflets in the park. In the application for this permit, the applicant must provide extensive identifying information. We view this accumulation of restraints as going beyond the narrow regulation allowed by the Constitution.

3. This opinion should not be construed as a total proscription of speech regulation at the park. Although the Association cannot ban speech altogether, it "may act to protect even such traditional public forums as city streets and parks. . . ." The courts have upheld the government's " 'substantial interest in maintaining the parks . . . in an attractive and intact condition, readily available to the millions of people who wish to see and enjoy them.' " *Ward v. Rock Against Racism*, 491 U. S. 781, 796 (109 SC 2746, 105 LE2d 661) (1989) (quoting *Clark v. Community for Creative Non-Violence*, 468 U. S. 288, 296 (104 SC 3065, 82 LE2d 221) (1984)).

> The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied. *Hague v. C.I.O.*, 307 U. S. at 515-516.

Because the Association has a legitimate interest in the orderly maintenance of the Park, certain time, place, and manner restrictions are appropriate.[3]

4. This Court is aware that, like most government property, the Park is a mixed forum. Not all areas of the Park are public. Certain areas, such as offices, the hotel, and storage buildings, are not a public park. The first amendment does not guarantee access to all publicly owned property. *Perry*, 460 U. S. at 46. This opinion does not speak to the limitations of public access and expression in these areas.

Nothing in the Constitution requires the Government freely

---

[3] For example, courts have recognized the significant interest of government in restricting first amendment activities to maintain the orderly and safe flow of traffic. *Ater v. Armstrong*, 961 F2d 1224 (6th Cir. 1992), cert. denied, 113 SC 493 (1992). The Court of Appeals for the District of Columbia Circuit found a significant interest in maintaining an "atmosphere of calm, tranquility and reverence" at the Vietnam Veterans Memorial. *Henderson v. Lujan*, 964 F2d 1179, 1184 (D.C. Cir. 1992).

to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities. *Cornelius,* supra, 473 U. S. at 799-800.

The Association may sometimes act not as a lawmaker or regulator but as a proprietor like a private landowner. Its actions, therefore, are not always subjected to heightened scrutiny. *Intl. Society &c.,* 112 SC at 2705. Regulation of nonpublic fora has been held appropriate if the restrictions are "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry,* 460 U. S. at 46.

We do not hold here that the Association may never regulate speech in the commercial enterprises within the park. The government, "no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Adderley v. Florida,* 385 U. S. 39, 47 (87 SC 242, 17 LE2d 149) (1966).

Certain attractions are open to the general public only for a fee. Where the public pays an admission fee or goes to purchase food or lodging, the Association may impose time, place, and manner restrictions on expression. Courts have approved restrictions on first amendment activities at commercial enterprises run by the government. See *United States v. Kokinda,* 497 U. S. 720 (110 SC 3115, 111 LE2d 571) (1990).

Because of the breadth of the restrictions of time, place, and manner, we hold that the trial court correctly declared the ordinance unconstitutional.

*Judgment affirmed. Hunt, P. J., Benham, Fletcher, Sears-Collins and Hunstein, JJ., concur.*

DECIDED JANUARY 8, 1993.

*Michael J. Bowers, Attorney General, John B. Ballard, Jr., Ray O. Lerer, Senior Assistant Attorneys General,* for appellant.

*Jay Alan Sekulow, James M. Henderson, Sr., Mark N. Troobnick,* for appellee.