**Gerald R. MILLER, Petitioner,**

v.

**The CITY OF LARAMIE, Respondent.**

No. 93–182.

Supreme Court of Wyoming.

Sept. 7, 1994.

Christopher H. Hawks, Director, Lawyers and Advocates for Wyoming, Jackson, for petitioner.

Douglas K. Bryant of Corthell & King, Laramie, for respondent.

Before GOLDEN, C.J., and THOMAS, CARDINE *, MACY and TAYLOR, JJ.

CARDINE, Justice, Retired.

We granted a petition for review to consider Gerald R. Miller's claim that his right of free speech, as guaranteed by Art. 1, § 20 of the Wyoming Constitution and the First Amendment to the United States Constitution was abridged by the City of Laramie's littering ordinance. Petitioner Miller was convicted of the crime of littering for distributing his free newspaper, *The Adviser*, by house-to-house delivery.

We hold that the record here readily demonstrates that *The Adviser* burdened the City of Laramie in an extraordinarily minor way and that, likewise, the burden placed on the citizens of Laramie and private property in that city was exceedingly trivial. We are confident that the vast majority of citizens will agree that such insignificant and slight burdens are a small price to pay for a free society—and then hasten to add that even a solid majority may not extend its prohibitions in such a manner as to violate the United States or the Wyoming Constitutions. Therefore,

We reverse.

Miller articulates these grounds for appellate review:

A. The Petitioner's actions and conduct in causing copies of *"The Adviser"* to be placed on the front porches, in the yards and on the grounds of the homes of several Laramie residents is conduct entitled to protection under the First Amendment of the United States Constitution and Article One Section 20 of the Wyoming Constitution.

(i) The City of Laramie's interest in preventing the visual blight caused by the unrequested door-to-door distribution of the Petitioner's free weekly newspaper does not outweigh the defendant's fundamental rights of free speech, press and circulation.

B. Prosecuting Mr. Miller for littering is not a reasonable time, place and manner restriction on Mr. Miller's conduct because Mr. Miller did not exercise his right of free speech in a public forum.

(i) The District Court's reliance on *Schenck v. The United States* [249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919) ] to affirm the decision of the Municipal Court's conviction of Mr. Miller was a misapplication of the law and should be disregarded.

C. Prosecuting the publisher of a free weekly newspaper for littering violates his rights of equal protection when his paper is delivered consistent with other area papers with the exception that it is done so without subscription.

The City of Laramie abbreviates the controversy with this contention:

Whether application of the City of Laramie's litter ordinance to the unrequested placement of copies of *The Adviser* upon private residential properties violates the [Petitioner's] constitutional rights as to speech and press.

The First Amendment of the United States Constitution provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

Article 1, § 20 of the Wyoming Constitution provides:

* Retired July 6, 1994.

Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right; and in all trials for libel, both civil and criminal, the truth, when published with good intent and [for] justifiable ends, shall be a sufficient defense, the jury having the right to determine the facts and the law, under direction of the court.

The City of Laramie Municipal Ordinance § 8.20.030 provides:

It is unlawful for any person to throw, discard, place or deposit, or cause to be thrown, discarded, placed or deposited, litter in any manner or amount on any public or private property within the corporate limits of the city except in containers or areas lawfully provided therefor.

And Ordinance § 8.20.010(A) defining litter provides:

A. "Litter" is any quantity of uncontainerized paper, metal, plastic, glass, animal feces, or miscellaneous solid waste which may be classed as trash, debris, rubbish, refuse, garbage or junk.

Miller distributed a free weekly newspaper, *The Adviser*, in Laramie. Approximately 6,000 copies of the newspaper were delivered door to door by depositing the paper on the porches of residences and buildings. In some instances, the papers came to be on the lawns, driveways or sidewalks of Laramie residences. An additional 1,000 copies were distributed by other means such as news racks. Miller did not solicit subscriptions nor did he seek the consent of residents before making delivery. *The Adviser* contained community news; sources of free information on such things as recipes, voice programming, parenting, and healthful sleep; sports stories; television programming for the coming week; a crossword puzzle; horoscope column; gossip column; a children's page; want adds; and numerous advertisements.

Our recital of facts herein is from the exhibits, stipulated statement of evidence by the parties, and the record in this case. The audiotape transcript of testimony was erased by the clerk of the municipal court after the record was returned following appeal to the district court. The erasure occurred during the appeal process. Our choices at this point are to reverse and remand for new trial for lack of a record, through no fault of petitioner, or decide this appeal on the record before us. We think the exhibits, admissions, stipulation of the parties and record are sufficient for our decision in this appeal.

By information filed on February 1, 1993, Miller was charged with seven counts of littering based upon complaints made by seven Laramie residents. The complaints were tried before a municipal judge on March 22, 1993. Miller was found guilty on four counts and not guilty on one count (apparently because the testimony of that witness was to the effect that the paper was found on his porch; all others testified that the papers were found on their sidewalks, driveways or in their yards). The complaints which alleged littering on the same day were consolidated, resulting in the disposition of the other two counts. Miller was fined $50.00 per count and assessed $10.00 costs, for a total fine of $210.00.

A timely notice of appeal was filed, and the convictions were reviewed by the district court. Miller's only defense throughout trial, on appeal, and in this petition for writ of review is that the littering statute, as applied to the delivery of his newspaper, was a violation of his constitutional right of free speech and equal protection. The district court affirmed the convictions, finding that the restrictions created by the littering ordinance were reasonable time, place and manner restrictions on the right of free speech.

Miller's petition for writ of review in this court was granted September 29, 1993. The parties have agreed that the newspaper in question contained news, advertising and other information; and no question is directly posed as to whether it was commercial or noncommercial speech. It is a necessary first step in our analysis, however, to expressly acknowledge that, because of its varied content, the newspaper must be categorized as noncommercial. See *Ad World, Inc. v. Township of Doylestown*, 672 F.2d 1136, 1139–40 (3rd Cir.1982). Because it is noncommercial speech, it is entitled to the full protection of the First and

Fourteenth Amendments of the United States Constitution, as well as Art. 1, § 20 of the Wyoming Constitution. See *Edenfield v. Fane,* —— U.S. ——, ——, 113 S.Ct. 1792, 1798, 123 L.Ed.2d 543, 552–53 (1993); *Ad World,* 672 F.2d at 1140. Purely commercial speech is tested against a more relaxed standard. *Edenfield.*

■ Miller has maintained from the beginning that the Laramie ordinance was unconstitutional as applied to the distribution of his newspaper. The general rule is that one who alleges unconstitutionality bears a heavy burden and must clearly and exactly show the unconstitutionality beyond any reasonable doubt. *Pauling v. Pauling,* 837 P.2d 1073, 1076 (Wyo.1992). However, that rule does not apply where a citizen's fundamental constitutional right, such as free speech, is involved. The strong presumptions in favor of constitutionality are inverted, the burden then is on the governmental entity to justify the validity of the ordinance, and this Court has a duty to declare legislative enactments invalid if they transgress that constitutional provision. See *Witzenburger v. State ex rel. Wyoming Community Dev. Auth.,* 575 P.2d 1100, 1114 (Wyo.1978), reh'g denied 577 P.2d 1386. The rule we apply under the circumstances of this case is:

Where rights, privileges, and immunities of the citizen are involved, the usual strong presumption in favor of constitutionality does not apply, and this rule is applicable to First Amendment rights. This is true in situations involving the right of freedom of expression or thought, or of speech, or association, or of the press, or of religion. Under some authority, the usual presumption in favor of constitutionality is merely weaker where the statute arguably inhibits fundamental rights.

Indeed, it is the rule that where the governmental action impinges on a fundamental constitutional right the usual presumption is inverted, and the presumption, sometimes characterized as heavy, is against the constitutionality of a statute or governmental action involving a right explicitly or implicitly secured by the Constitution, including a right secured by the First Amendment, such as freedom of speech or expression. Moreover, every reasonable presumption against waiver of fundamental constitutional rights is indulged by the courts and they do not presume acquiescence in the loss of fundamental rights. In view of the inversion of the usual presumption of constitutionality, the burden is on the state of justifying the validity of the statute or other governmental action, as by a demonstration that the statute serves a compelling governmental interest.

(footnotes omitted) 16 C.J.S. Constitutional Law, § 106a (1984); and see *Parrish v. Lamm,* 758 P.2d 1356 (Colo.1988); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Thus, we are duty bound to strictly scrutinize the ordinance in the light of the preeminent role played by the First Amendment in our free society.

The City of Laramie directs our attention to the fact that its littering ordinance prohibits all littering, without regard to whether it is commercial or noncommercial, and without regard to whether it relates to matters of politics, religion or whatever. In other words, not only does the ordinance affect (prohibit) the delivery of *The Adviser,* but it also prohibits the depositing of litter which contains a religious, political, or any other sort of message. Thus, the question posed boils down to whether Laramie may place a complete ban on speech, a form of prior restraint, if that speech is in a form which may eventually be viewed as litter.

The record from the trial in Laramie Municipal Court does not sustain Laramie's argument that the ordinance is merely a ban on litter in any form which, therefore, easily passes constitutional muster. The City of Laramie had an onerous burden of demonstrating clearly and precisely that the ordinance is, in fact, applied in a nondiscriminatory manner. From this record, we discern that based on a mere handful (perhaps not more than a dozen out of some 7,000 papers distributed weekly) of citizen complaints that

the newspaper was found in their yards, Miller was prosecuted for littering. There was no evidence adduced by Laramie that the ordinance is generally enforced, or at least often enforced. The record makes no suggestion that the ordinance is generally enforced against those who "litter" in a more traditional sense of that "crime" (see W.S. 6–3–204 (1988)). Moreover, the proof of littering in this instance was based solely upon rather gossamer circumstances, e.g., that the newspaper was found in the yard (was it placed there by Miller, or did it blow there, or did a dog drag it there, etc.); that it was found on the sidewalk (again without any demonstration of how it arrived at that location—might a disgruntled citizen carry it to the street and deposit it there and assert that the publisher is consequently responsible?—Is this publisher any more responsible for where his newspaper was found than is a fast food restaurant for waste products that bear its logo?). As noted above, the burden must fall on Laramie to demonstrate that the restrictions imposed on speech by its littering ordinance are narrowly tailored to achieve the goal of reducing litter and that any time, place and manner restrictions that might affect Miller and those similarly situated are guardedly balanced in a constitutional sense.

Counsel for the City of Laramie maintain that Miller should not be entitled to have his acts of littering be regarded as protected speech. Quite the contrary is the case: Miller is entitled to have his right of free speech not curtailed by an ordinance designed solely to prevent littering:

> We are of [the] opinion that the purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it. Any burden imposed upon the city authorities in cleaning and caring for the streets as an indirect consequence of such distribution results from the constitutional protection of the freedom of speech and press.

Schneider v. New Jersey, 308 U.S. 147, 162, 60 S.Ct. 146, 151, 84 L.Ed. 155, 165 (1939); and see McQuillin Mun. Corp. § 24.389 (3rd ed. 1989). In this case, though clear proof is absent, it would appear from the few complaints that 6,990 persons may have been willing to receive The Adviser.

The parties had stipulated that the Laramie policeman testified that petitioner's newspaper, as it lay before him in the courtroom, was not litter. Apparently, according to Laramie, it became litter when it was found on the sidewalk and petitioner was then guilty of a crime without any proof that petitioner was responsible for the newspaper being on the sidewalk—surely a questionable result. We also suggest that the Laramie ordinance, on its face, demonstrates a legislative intent that a newspaper like The Adviser is not litter, litter being defined as "trash, debris, rubbish, refuse, garbage or junk." But that is unnecessary to our decision here.

We hold that Laramie may not ban all distribution of noncommercial speech materials which it views as litter under its wide-sweeping ordinance. It may place reasonable restrictions on such distributions so long as they do not have the effect of squelching legitimate speech which is protected by the constitution and so long as Laramie can demonstrate that other substantial means of communicating such speech are meaningfully available, including economic feasibility. See e.g., Distribution Systems of America, Inc. v. Village of Old Westbury, 785 F.Supp. 347 (E.D.N.Y.1992); Project 80's, Inc. v. City of Pocatello, 942 F.2d 635 (9th Cir.1991). Balancing the constitutional right of free speech with the evidence adduced by Laramie to sustain the validity of its ordinance, we find that the minor burden of receiving Miller's paper was indisputedly outweighed by his right of free speech and that the justification for restrictions upon distribution (finding a few papers in a driveway, on a sidewalk or street) which resulted in violation of the ordinance were not reasonable.

We hold that the ordinance, as applied to Miller, violated constitutional guarantees. Hence, we remand with directions that the district court further remand to the municipal court for vacation of the convictions and dismissal of the littering charges.

Reversed and remanded with directions that the convictions for littering be vacated

and that the charges against Miller be dismissed.

MACY, J., filed an opinion specially concurring.

GOLDEN, C.J., filed a dissenting opinion.

MACY, Justice, specially concurring.

I concur in the result reached by the majority but for a different reason. If it were not necessary to dance through the "litter" of cases in deciding whether the ordinance is or is not constitutional, I would join in the dissent of Chief Justice Golden. I do not, however, think that it is necessary to invoke the Constitution to decide this case. *Pisano v. Shillinger*, 835 P.2d 1136, 1138 (Wyo.1992); *Wheeler v. Parker Drilling Company*, 803 P.2d 1379, 1383 n. 1 (Wyo.1991).

The ordinance in question states that litter includes uncontainerized paper which may be classified as being trash, debris, rubbish, refuse, garbage, or junk. Those words clearly describe anything which has been discarded as being of no value. There is a total lack of proof that *The Adviser* had been discarded as being of no value. The proof was to the contrary.

GOLDEN, Justice, dissenting.

As indicated by this court's previous freedom of speech and press decisions, there can be little doubt of our relentless concern to avoid abridgments to freedom of expression. But this trivial city ordinance hardly qualifies as a menace to those revered freedoms. It neither suppresses content nor prohibits distribution and, as applied by the trial court, cannot even be said to prohibit THE ADVISER from being distributed door to door except when that distribution is so careless as to be littering. Such innocuous regulation of littering is not a speech or press violation and I must dissent.

The record is clear that Laramie punished Mr. Miller for those distributions of his newspaper that were carelessly strewn about neighborhoods.[1] The record is also clear that Mr. Miller was acquitted in those instances where the newspaper was placed on the porch of the household. This distinction indicates that, as the record stands, Laramie is neither making a content-based determination of what newspapers shall or shall not be distributed nor unreasonably restricting distribution, but is controlling "litter."

Appellant contends that the constitutional violations occur when the ordinance is applied to his newspaper distribution and sweepingly states that every law which impinges on free expression is to be strictly scrutinized. In other words, any limitation on freedom of expression is unconstitutional; quite candidly, this is a banal argument routinely rejected by the United States Supreme Court since the 1943 case of *Martin v. Struthers*, when it recognized that "the peace, good order and comfort of the community may imperatively require regulation of the time, place and manner of distribution." *Martin*, 319 U.S. 141, 143, 63 S.Ct. 862, 863, 87 L.Ed. 1313, 1317 (1943). Appellant attempts to assert the ordinance violates WYO. CONST. art. 1, § 20, but finds it of such insignificance that his only reference to the provision is as *"passim"* in his table of contents. Accordingly, appellant provides no analysis, authority, or cogent argument concerning the state constitutional provision's application to the issues. Instead, appellant relies on federal case law and does not distinguish between the two provisions of the two constitutions.

This court has previously admonished Wyoming lawyers that it is imperative they properly brief this court on relevant state constitutional questions. *Dworkin v. L.F.P., Inc.* 839 P.2d 903, 909 (Wyo.1992). "To develop and prove [his] position with respect to the state constitutional provision, [Miller], and any other similarly situated litigant, must use 'a precise, analytically sound approach.' Counsel must provide this court with proper arguments and briefs to ensure the future growth of this important area of law." *Dworkin* 839 P.2d at 909 (quoting Robert F. Utter, *Advancing State Constitutions in Court*, TRIAL, Oct. 1991, at 45). "Recourse to the Wyoming Constitution as an independent source for recognizing and protecting the individual rights of our citizens

---

1. The newspapers were found in yards, drive- ways, snowdrifts, the street, and a window well.

must spring from a process that is articulable, reasonable, and reasoned." *Saldana v. State,* 846 P.2d 604, 621 (Wyo.1993) (quoting *State v. Gunwall,* 106 Wash.2d 54, 720 P.2d 808, 813 (1986)) (Golden, J., concurring). Appellant's failure to properly brief the state constitutional arguments limits our review to his federal constitutional arguments.

The United States Supreme Court's modern day jurisprudence requires that in noncommercial speech cases:

> The normal inquiry that our doctrine dictates is, first, to determine whether a regulation is content-based or content-neutral, and then based on the answer to that question, to apply the proper level of scrutiny.

*Ladue v. Gilleo,* ― U.S. ―, ―, 114 S.Ct. 2038, 2047, 129 L.Ed.2d 36, 50 (1994) (O'Connor, J., concurring).

If a regulation is content-neutral, the United States Supreme Court has upheld reasonable "time, place, or manner" restrictions when justified without reference to the content of speech. *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661, 675 (1989); *Martin,* 319 U.S. at 143, 63 S.Ct. at 863, 87 L.Ed. at 1316–17.

Although THE ADVISER is primarily comprised of commercial speech, I agree with the majority's initial classification of THE ADVISER as noncommercial speech and concur that it is entitled to full first amendment protection. *See Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Although the majority makes no determination of the ordinance's effect upon free speech, that is, whether it is content-based or content-neutral, the language and level of scrutiny employed forces an assumption that the majority must have concluded it is a content-based regulation. I find no basis for such a conclusion.

I am of the opinion that the ordinance is constitutionally valid as a reasonable, time, place and manner regulation. The United States Supreme Court has upheld justified "time, place and manner" regulations which are narrowly tailored to serve a significant governmental interest and leave open ample alternative channels for communication of the information. *See Ward,* 491 U.S. at 791, 109 S.Ct. at 2753, 105 L.Ed.2d at 675. Laramie justifies the ordinance as a means to achieve its significant interest in maintaining clean streets. The United States Supreme Court has stated that cities have a legitimate interest in clean streets. *See Schneider v. State,* 308 U.S. 147, 162, 60 S.Ct. 146, 151, 84 L.Ed. 155, 165, (1939); *Martin,* 319 U.S. at 143, 63 S.Ct. at 863, 87 L.Ed. at 1316–17.

The Court specifically stated in *Schneider* that the guarantee of freedom of speech or of the press does not "deprive a municipality of power to enact regulations against throwing literature broadcast in the streets. Prohibition of such conduct would not abridge the constitutional liberty since such activity bears no necessary relationship to the freedom to speak, write, print or distribute information or opinion." *Schneider,* 308 U.S. at 1611, 60 S.Ct. at 151, 84 L.Ed. at 165. Following the instructive advice of *Schneider,* this court "should be astute to examine the effect of challenged legislation" in each case in which legislative abridgment of the fundamental personal rights and liberties of freedom of speech and freedom of the press is asserted.

> Mere legislative preferences or beliefs respecting matters of public convenience may * * * be insufficient to justify [regulation which] diminishes the exercise of rights so vital to the maintenance of democratic institutions. And so, as cases arise, the delicate and difficult task falls upon the courts to weigh the circumstances and to appraise the substantiality of the reasons advanced in support of the regulation of the free enjoyment of the rights.

*Schneider,* 308 U.S. at 161, 60 S.Ct. at 151, 84 L.Ed. at 165.

In *Schneider,* the distributors of literature on a public street had been convicted by the city for littering. The *Schneider* court's analysis revealed the facts to indicate that although the distributors were convicted of littering, it was actually the persons receiving the literature who were throwing it down on the streets. Under these facts, the Court explained that "any burden imposed upon the

city authorities in cleaning and caring for the streets as an *indirect* consequence of such distribution results from the constitutional protection of the freedom of speech and press." *Schneider*, 308 U.S. at 162, 60 S.Ct. at 151, 84 L.Ed. at 165. (Emphasis added). But, the Court observed that such constitutional protection does not deprive a city of all power to prevent street littering and among the obvious methods of preventing littering is to punish those who actually throw papers on the street. *Id.*

In significant contrast to the facts of *Schneider*, an ordinance which punished a citizen who merely handed a leaflet to a passing pedestrian who in turn threw the leaflet on the ground, the facts of the case before us present an ordinance which punished a citizen who was found at trial to have actually thrown papers on "driveways, yards, sidewalks, a window well, the street, and a snow bank." Thus, in my view, this ordinance falls within that class of those "obvious methods of preventing littering" which the Court expressly referred to as passing constitutional muster, namely, an ordinance which punishes those who actually throw papers on the ground. Clearly, the Laramie ordinance does not punish the citizen who merely hands the paper to a passing pedestrian; instead, it has punished only that citizen who has thrown the paper on a driveway, yard, sidewalk, the street, or snow bank, or into a window well. Under the facts of this case, Mr. Miller was not punished when he threw the paper on the residence porch or doorstep. It is clear that the ordinance reasonably regulates the manner of distribution without reference to content, is serving a significant governmental interest and leaves open ample alternative channels for communication of the information. I would hold there has been no constitutional violation and affirm the convictions.