S99A0474. STATESBORO PUBLISHING COMPANY, INC. v. CITY OF SYLVANIA.
(516 SE2d 296)

Fletcher, Presiding Justice.

Statesboro Publishing Company delivers the *Penny-Saver*, a weekly shopper newspaper, without charge to Sylvania city residents by throwing the paper in yards or driveways. To deal with the litter caused by unclaimed papers, the city enacted an ordinance that prohibits distribution of free printed material in yards, driveways, or porches. The city then sought a declaratory judgment, and the trial court upheld the ordinance as constitutional. Because the ordinance is not narrowly tailored to meet the city's interest in preventing litter and fails to provide for meaningful alternatives of communication, we hold that it violates the freedom of speech and press under the United States and Georgia Constitutions. Therefore, we reverse.

The city enacted its ordinance in 1992 prohibiting the distribution of free printed material. The ordinance does not ban all handbills or newspapers within the city, but severely limits their distribution to homes. It states the following:

**Distribution of printed material prohibited.**

(a) It shall be unlawful for any person, firm, corporation, partnership, corporation or other entity to distribute or cause to be distributed within the City of Sylvania, any handbill or printed or written material by placing, or causing the same to be placed, in any yards, driveways, walkways or porches of any structure within the City of Sylvania.

Section (b) exempts publications for which the recipient has paid money. Section (c) specifies that delivery of free printed or written material may be made in three ways: by mail, by personally handing the material to willing recipients, and by using doorknobs or "mailbox hanging devices." Section (d) provides for punishment of violators.

The *Penny-Saver* is a tabloid-sized newspaper that contains commercial, political, and classified advertisements and provides notices about community events and news. After the city passed its ordinance in 1992, the publisher delivered the shopper by mail to the more than 900 residents, except for five months in 1996 when a route carrier delivered the paper to driveways. To deal with the city's concerns about litter, the publisher at that time included notices in every issue requesting that residents notify it if they did not want to receive the paper. Eleven residents requested that delivery cease. In addition, the carrier conducted sweeps within three days of delivery to collect any copies that had not been picked up by residents.

After the publisher threatened to sue if the city enforced the ordinance against the *Penny-Saver*, the city filed this declaratory judgment action. Finding that the shopper was noncommercial speech, the trial court upheld the ordinance as a reasonable regulation on the time, place, and manner of expression. It concluded that the ordinance was narrowly tailored to eliminate unsolicited publications and provided adequate alternative means of distribution.

1. The first amendment of the United States Constitution prohibits laws abridging the freedom of speech and press.[1] The Supreme Court has held that the first amendment prohibits cities from banning the distribution of handbills, leaflets, circulars, and papers in the streets[2] or from house to house.[3] "Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that . . . it must be fully preserved."[4] Cities may, however, adopt reasonable restrictions regulating the time, place, or manner of expression.[5] The restrictions are valid if they do not refer to the content of the speech, are narrowly tailored to serve a significant government interest, and leave open alternative methods of communication.[6]

Applying this test, we agree with the trial court that the Sylvania ordinance is content-neutral. The ordinance applies not only to the home delivery of the *Penny-Saver*, but also to all political, religious, and personal speech in handbills, pamphlets, and other printed

---

[1] U. S. Const. amend. I.

[2] *Schneider v. New Jersey*, 308 U.S. 147, 163-164 (60 SC 146, 84 LEd 155) (1939).

[3] *Martin v. City of Struthers*, 319 U.S. 141, 149 (63 SC 862, 87 LEd 1313) (1943).

[4] Id. at 147.

[5] *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (104 SC 3065, 82 LE2d 221) (1984); see also *Schneider*, 308 U.S. at 165 (commercial soliciting and canvassing may be subjected to regulation).

[6] *Clark*, 468 U.S. at 293; *Stone Mountain Memorial Ass'n v. Zauber*, 262 Ga. 661 (424 SE2d 279) (1993); see also *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 566 (100 SC 2343, 65 LE2d 341) (1980) (adopting a similar analysis for evaluating regulations on commercial speech that is neither misleading nor related to unlawful activity).

94

materials distributed to homes. It thus includes within its scope every kind of unsolicited written speech.

Because the ordinance regulates every written "instrument in the dissemination of opinion" and what is arguably the most effective way of distributing the information,[7] we must review it closely to ensure that it is narrowly drawn to serve the city's interest. The government is not required to adopt the least restrictive means for regulating content-neutral speech, but the regulation must not burden substantially more speech than necessary to further the government's interests.[8] After careful review, we conclude that the Sylvania ordinance's restrictions on the distribution of printed materials at homes are not narrowly tailored to serve the city's desire to protect its aesthetic beauty and prevent litter.[9]

The Sylvania ordinance bans a substantial amount of speech that residents may want to hear and that the city has not shown creates litter or destroys its beauty. The restrictions apply to the candidate with a door-to-door campaign for political office, the Jehovah's witness who canvasses about his religious beliefs, the environmental activist who opposes construction of a landfill nearby, and the neighborhood newsletter that warns residents about recent burglaries in the area. All these speakers are prohibited from leaving their literature on the porch, on doorsteps, or under doormats at any home in the city. Moreover, the city has other ways to prevent litter caused by the home delivery of papers without unreasonably infringing on freedom of speech or the press. The city could require the publisher to retrieve papers that residents did not pick up in a timely manner, prosecute the publisher for papers found littering the streets or drainage ditches, or punish residents who fail to pick up litter in their own yards.

Furthermore, given the breadth of speech regulated, the ordinance fails to leave open adequate alternative means of communication.[10] A city cannot limit the speaker or publisher to methods of

---

[7] See *Schneider*, 308 U.S. at 164 ("pamphlets have proved most effective instruments in the dissemination of opinion. And perhaps the most effective way of bringing them to the notice of individuals is their distribution at the homes of the people.").

[8] See *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (109 SC 2746, 105 LE2d 661) (1989).

[9] Cf. *City of Cincinnati v. Discovery Network*, 507 U.S. 410, 428 (113 SC 1505, 123 LE2d 99) (1993) (under standards set forth in *Central Hudson*, city failed to establish a reasonable fit between its legitimate interest in safety and aesthetics and its prohibition of news racks distributing commercial handbills); *State of Georgia v. Café Erotica*, 269 Ga. 486 (500 SE2d 574) (1998) (holding that state statute that bans all off-site outdoor advertising of commercial establishment where nudity is exhibited is not narrowly tailored to achieve its stated goal of traffic safety).

[10] See *Ad World, Inc. v. Township of Doylestown*, 672 F.2d 1136 (3d Cir. 1982) (striking down ordinance that prohibited distribution of advertising material at the residence, on the

delivery that are prohibitively expensive, such as mail or hand delivery, two of the alternatives enumerated in Sylvania's ordinance.[11] A closer question is presented by the ordinance's third alternative, the requirement that papers be placed on doorknobs or in mailbox hanging devices. Because this restriction applies to any printed material and would impose substantial costs on an important means of communication, we conclude the Sylvania ordinance imposes unreasonable regulations on the place and manner of distribution in violation of the first amendment.

2. The Georgia Constitution provides that "[n]o law shall be passed to curtail or restrain the freedom of speech or of the press."[12] Our state constitution provides even broader protection of speech than the first amendment.[13] In analyzing time, place, and manner regulations on content-neutral speech, we depart from federal constitutional analysis in one respect.

Under federal law, the Supreme Court does not require the government to adopt the least restrictive means for regulating content-neutral speech.[14] This approach requires a court to examine more closely a direct ban on a particular type of speech than an indirect ban against all speech. As a result, a regulation that bans commercial handbills is subject to greater scrutiny because it does not also ban noncommercial speech.[15] Yet, as Justice Marshall pointed out, "By narrowly limiting its concern to whether a given regulation creates a content-based distinction, the Court has seemingly overlooked the fact that content-neutral restrictions are also capable of unnecessarily restricting protected expressive activity."[16] He concludes that this "two-tiered approach" offends our national commitment to vigorous debate on public issues.[17]

Because the ordinance challenged in this case regulates political, religious, and personal speech, we interpret our state constitution to require the city to narrowly draw its regulations to suppress no more speech than is necessary to achieve the city's goals. Here, we con-

---

property, or on the mailbox unless the resident requests the material or gives consent).

[11] See *City of Ladue v. Gilleo*, 512 U.S. 43, 57 (114 SC 2038, 129 LE2d 36) (1994); *New Jersey Action v. Edison Township*, 797 F.2d 1250, 1261-1262 (3d Cir. 1986); *Ad World*, 672 F.2d at 1142; *Miller v. City of Laramie*, 880 P.2d 594, 598 (Wyo. 1994).

[12] Constitution of the State of Georgia of 1983, art. I, sec. I, para. V.

[13] *State v. Miller*, 260 Ga. 669, 671 (398 SE2d 547) (1990).

[14] See *Ward v. Rock Against Racism*, 491 U. S. 781, 799 (109 SC 2746, 105 LE2d 661) (1989).

[15] See, e.g., *City of Cincinnati*, 507 U. S. at 428; see also id. at 445 (Rehnquist, C.J., dissenting) (criticizing as illogical result of majority's decision requiring city to choose between restricting fully protected speech and allowing the unabated proliferation of news racks on street corners).

[16] See *Clark*, 468 U.S. at 313 (Marshall, J., dissenting).

[17] Id. at 314 (Marshall, J., dissenting).

clude that the city's ordinance imposes too many restrictions on the distribution of handbills, pamphlets, and newspapers at homes and that the city's desire to protect the aesthetic beauty of the city does not justify these restrictions.[18] Because the Sylvania ordinance unreasonably restricts the home delivery of printed materials, we hold that it violates the free speech and press provisions of the Georgia Constitution.

*Judgment reversed. All the Justices concur, except Hines, J., who concurs in Division 1 and the judgment, and Carley, J., who dissents.*

CARLEY, Justice, dissenting.

The majority holds that the ordinance at issue violates both the federal and state constitutional right to freedom of speech and press. In my opinion, this Court should not address the state constitutional issue because the trial court never reached it. Furthermore, I believe that, consistent with the First Amendment of the Constitution of the United States, the ordinance is narrowly tailored to meet a substantial governmental interest and does provide for reasonable alternative avenues of communication. Therefore, I dissent to the majority's reversal of the trial court's judgment.

1. In its order, the trial court clearly analyzed and rejected a constitutional challenge based upon the First Amendment to the United States Constitution. However, the trial court did not cite either the Georgia constitutional right to freedom of speech and press, or any case law applying that right. Since the trial court did not distinctly pass on the state constitutional issue, this Court should not address that issue on appeal. *Harrell v. Little Pup Development & Constr.,* 269 Ga. 143, 145 (2) (498 SE2d 251) (1998).

2. I agree that the Sylvania ordinance is content-neutral, and further note that the majority correctly, if implicitly, concedes that the prevention of litter and the promotion of neighborhood aesthetics are substantial interests of the City. See Durden & Ray, *Litter or Literature: Does the First Amendment Protect Littering of Neighborhoods?,* 26 Stetson L. Rev. 837, 842-845 (1997).

I do not agree with the major premise of the majority opinion, which is that the ordinance is not narrowly tailored so as to meet those substantial interests because it "bans a substantial amount of speech. . . ." The ordinance "bans" no amount of speech, but rather

---

[18] See *Miller v. City of Laramie,* 880 P.2d at 598 (striking down ordinance restricting the distribution of a free weekly newspaper at homes because the anti-littering justification was outweighed by the distributor's right of free speech); cf. *H & L Messengers v. City of Brentwood,* 577 SW2d 444 (Tenn. 1979) (striking down a city ordinance that prohibited the throwing, depositing, or distributing of any handbill on any private premises, unless delivered to a person on the premises, except mail, newspapers, religious, and political material because it exempted ideological matter and, therefore, was not content-neutral).

simply imposes restrictions as to time, place, and manner of some forms of speech. The ordinance's restrictions apply to all printed material, whether of a political, religious, or community nature. Of course, this broad application to all non-commercial speech, as well as to commercial speech, is precisely what makes the ordinance content-neutral. Thus, I believe that the majority incorrectly uses the broad applicability of the ordinance, which is the very factor demonstrating its constitutional neutrality, as the basis for holding that the ordinance is too broadly tailored to pass constitutional muster. The majority cites *Ward v. Rock Against Racism*, 491 U. S. 781, 799 (II) (B) (109 SC 2746, 105 LE2d 661) (1989) for the proposition that the regulation must not burden substantially more speech than necessary. In context, however, this proposition does not mean that restrictions as to time, place, and manner should not apply to speech of widely varying *content*, but that the restrictions should not broadly apply to many *modes* of speech which do not cause the evil which the regulation seeks to eliminate. *Ward v. Rock Against Racism*, supra at 799 (II) (B), fn. 7. Thus, it is constitutionally permissible for the City's ordinance to apply broadly to all of those forms of speech which can cause litter and diminish the aesthetics of the community.

"[T]he requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.' [Cits.]" *Ward v. Rock Against Racism*, supra at 799 (II) (B). A court does not determine the validity of time, place, or manner regulations on the basis of its agreement with the governmental entity concerning the most appropriate method for promoting its governmental interests or the degree to which those interests should be promoted. *Ward v. Rock Against Racism*, supra at 800 (II) (B). Thus, the majority mistakenly relies on the existence of other possible methods to prevent litter and promote aesthetics. Time, place, and manner regulations are not "invalid simply because there is some imaginable alternative that might be less burdensome on speech. [Cit.]" *United States v. Albertini*, 472 U. S. 675, 689 (III) (105 SC 2897, 86 LE2d 536) (1985).

I believe that the requirement of narrow tailoring is met in this case, because the City would achieve its goals of litter control and aesthetics less effectively without the ordinance. A different conclusion is not required by the City's decision to permit certain methods of residential delivery which can potentially cause litter and visual blight. In fact, the Supreme Court of the United States "has allowed cities to enact partial solutions to further their aesthetic interests, [cits.], and has explicitly rejected a requirement that such solutions be part of a 'comprehensive plan' to improve aesthetics, [cit.]." *Gold Coast Publications v. Corrigan*, 42 F3d 1336, 1347 (III) (A) (2) (b) (11th Cir. 1994). Moreover, the delivery methods permitted by the

98

ordinance have less negative effect on the City's interests than those methods which are prohibited. Papers left in yards, driveways, walkways, or porches are more likely to become scattered than those which are secured to doorknobs or mailboxes or delivered personally or by mail. Furthermore, homeowners clearly desire materials for which they have paid and, thus, are likely to assume responsibility for those materials.

> When it is known that these materials are desired, there is ample reason to believe that homeowners in the area will both collect these materials before they can become either litter or eyesores and assume the responsibility, as they do with newspapers and other home door-step deliveries, to suspend delivery or to arrange for these materials to be picked up in their absence.

*Commonwealth v. Sterlace*, 391 A2d 1066, 1069 (II) (Pa. 1978) (distinguishing between solicited and unsolicited materials).

The ordinance provides for alternative means of communication, but the majority dismisses them as inadequate due to their expense. However, the evidence of record regarding the cost of delivery by mail undermines the majority's assertion that that method is "*prohibitively* expensive." (Emphasis supplied.) Statesboro Publishing itself does not so contend, but argues only that mail is "slower, more costly and less reliable." In response to an interrogatory, Statesboro Publishing admits that it is presently using mail to deliver its publication in the City and that mail is its delivery method on rural routes. The majority also opines that delivery of the papers on doorknobs or in mailbox hanging devices would entail "substantial costs." However, the evidence does not show that the cost of this method of delivery is substantial. Instead, Statesboro Publishing merely speculates that the cost would be comparable to the alternative of hand delivery directly to each resident. Moreover, "[t]he First Amendment does not guarantee a right to the most cost-effective means of distribution. . . ." *Globe Newspaper Co. v. Beacon Hill Architectural Comm.*, 100 F3d 175, 193 (I) (D) (1st Cir. 1996). At best, Statesboro Publishing has shown that the ordinance has removed its most cost-effective means of delivery. A publisher of written material is not entitled to a particular mode of delivery at the expense of the City's substantial interest in preventing litter and promoting aesthetics.

3. Although the majority does not address it, Statesboro Publishing also contends that the ordinance violates its right to equal protection. However, it bases this contention upon essentially the same reasons advanced in support of the First Amendment challenge. *Holmberg v. City of Ramsey*, 12 F3d 140, 144 (8th Cir. 1993). In my

opinion, both the First Amendment and the equal protection challenges are without merit, and the issue regarding the state constitutional right to freedom of speech and press is not properly before this Court. Therefore, I respectfully dissent.

DECIDED MAY 17, 1999.

*Brown & Livingston, Charles H. Brown,* for appellant.
*Hunter & Hunter, Hugh T. Hunter,* for appellee.
*Hull, Towill, Norman, Barrett & Salley, David E. Hudson, Long, Aldridge & Norman, Frank T. Davis, Jr., Dow, Lohnes & Albertson, Peter C. Canfield, Sean R. Smith, Edward A. Webb, Walter E. Sumner,* amici curiae.