The Honorable Joyce Elliott State Representative 7808 Lassie Lane Little Rock, AR 72204-8314
Dear Representative Elliott:
I am writing in response to your request for my opinion on the following three questions:
 1. Regarding state employees: During nonwork periods and uncompensated time in nonwork stations, do state employees have the right of free speech and freedom of association as it relates to the rights of state employees to communicate with one another and with members of the public, including representatives of labor organizations?
 2. Regarding state employees: Do state employees have the right to choose to join or not join a labor organization and to be free from interference or coercion by others in making that choice?
 3. Regarding access: Do representatives of labor organizations have the same rights of access to state buildings and public space as any other members of the public (e.g., parking lots, cafeterias, lobbies and other facilities and space that is open to the public)?
RESPONSE
I cannot answer your first question without knowing what sorts of speech activities have occurred at the various public workplaces. However, I can and will set forth the various standards for restricting free speech and associational rights in public forums, governmentally designated forums and nonpublic forums or nonforums, respectively. With respect to your second question, both Ark. Const. amend. 34 and A.C.A. § 11-3-303
guarantee state workers the right to make an uncoerced choice regarding union membership. Finally, I believe the answer to your third question is "yes," subject to the condition that a right of access does not necessarily carry with it a right to engage in a particular speech activity such as soliciting.
Question 1: Regarding state employees: During nonwork periods anduncompensated time in nonwork stations, do state employees have the rightof free speech and freedom of association as it relates to the rights ofstate employees to communicate with one another and with members of thepublic, including representatives of labor organizations?
As I understand your question, you want to know whether a public employee may speak and associate with whomever he chooses, including nonpublic employees, during break times in "nonwork stations" located on public property. This question implicates U.S. Const. amend. 1 and Ark. Const. art. 2, § 6, which guarantee citizens freedom of speech and freedom of association.
I am unable to answer your question with respect to the general category of "state employees" because the degree of protection afforded expression and assembly in any particular instance depends on the nature of the forum in which the activity at issue occurs. As stated in ArkansasEducational Television Commission v. Forbes, 523 U.S. 666, 677 (1998):
 "[T]he Court [has] identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." Cornelius v. NAACP Legal Defense Ed. Fund, Inc., 473 U.S. 788, 802 (1985). Traditional public fora are defined by the objective characteristics of the property, such as whether, "by long tradition or by government fiat," the property has been "devoted to assembly and debate." Perry Ed. Assn., 460 U.S., at 45. The government can exclude a speaker from a traditional public forum" only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." Cornelius, supra, at 800.
 Designated public fora, in contrast, are created by purposeful governmental action. "The government does not create a [designated] public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional public forum for public discourse." 473 U.S., at 802; accord, International Soc. for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678 (1992) (ISKCON) (designated public forum is "property that the State has opened for expressive activity by part or all of the public"). Hence "the Court has looked to the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum." Cornelius, 473 U.S., at 802. If the government excludes a speaker who falls within the class to which a designated public forum is made generally available, its action is subject to strict scrutiny. Ibid.; United States v. Kokinda, 497 U.S. 720, 726-727 (1990) (plurality opinion of O'CONNOR, J.).
 Other government properties are either nonpublic fora or not fora at all. ISKCON, supra, at 678-679. The government can restrict access to a nonpublic forum "as long as the restrictions are reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view." Cornelius, supra, at 800 (internal quotation marks omitted).
 In summary, traditional public fora are open for expressive activity regardless of the government's intent. The objective characteristics of these properties require the government to accommodate private speakers. The government is free to open additional properties for expressive use by the general public or by a particular class of speakers, thereby creating designated public fora. Where the property is not a traditional public forum and the government has not chosen to create a designated public forum, the property is either a nonpublic forum or not a forum at all.[1]
In Perry, the Court set forth in detail the standard for reviewing restrictions on speech and assembly imposed within each of these three varieties of venue:
 In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the State to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which" have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Hague v. CIO, 307 U.S. 496, 515 (1939). In these quintessential public forums, the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. Carey v. Brown, 447 U.S. 455, 461 (1980). The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. United States Postal Service v. Council of Greenburgh Civic Assns., 453 U.S. 114, 132 (1981); Consolidated Edison Co. v. Public Service Comm'n, 447 U.S. 530, 535-536 (1980); Grayned v. City of Rockford, supra, at 115; Cantwell v. Connecticut, 310 U.S. 296 (1940); Schneider v. State, 308 U.S. 147 (1939).
 A second category consists of public property which the State has opened for use by the public as a place for expressive activity. The Constitution forbids a State to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place. Widmar v. Vincent, 454 U.S. 263 (1981) (university meeting facilities); City of Madison Joint School District v. Wisconsin Employment Relations Comm'n, 429 U.S. 167 (1976) (school board meeting); Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546
(1975) (municipal theater). Although a State is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum. Reasonable time, place, and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest. Widmar v. Vincent, supra, at 269-270.
 Public property which is not by tradition or designation a forum for public communication is governed by different standards. We have recognized that the "First Amendment does not guarantee access to property simply because it is owned or controlled by the government." United States Postal Service v. Council of Greenburgh Civic Assns., supra, at 129. In addition to time, place, and manner regulations, the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view. 453 U.S., at 131, n. 7. As we have stated on several occasions, "`"[t]he State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated."'" Id., at 129-130, quoting Greer v. Spock, 424 U.S. 828, 836 (1976), in turn quoting Adderley v. Florida, 385 U.S. 39, 47 (1966).
460 U.S. at 45-46. (Footnote omitted.) Accord United States v. Kokinda,497 U.S. 720, 727 (1990) (applying a reasonableness standard in upholding a regulation that would bar political advocacy on a sidewalk adjacent to a post office).
In accordance with the foregoing, I believe the question of whether a public employee on break on public property is entitled to associate and speak with whomever he pleases will depend on the nature of the property. For instance, if the break room were by policy restricted to public employees, I believe the state might well be justified in restricting general public access under the above standard. See, e.g., Jones v. NorthCarolina Prisoners' Labor Union, 433 U.S. 119 (1977) (because an air base is not a public forum, Air Force need only provide rational basis for excluding certain groups). I further believe it is of no analytical significance that the challenged speech activity might involve union proselytizing. As the Court noted in Kokinda:
 Solicitation is a recognized form of speech protected by the First Amendment. See Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 629 (1980); Riley v. National Federation of Blind of N.C., Inc., 487 U.S. 781, 788-789 (1988).
497 U.S. at 725. Determining whether the speech at issue might be suppressed in any particular instance will entail selecting the appropriate standard of review from among the standards described above. Only a finder of fact can decide on a case-by-case basis what standard applies and what restrictions might be warranted. As the court noted inHubbard Broadcasting v. Metropolitan Sports, 797 F.2d 552, 555 (8th
Cir. 1986):
 In making this determination, the court may appropriately consider the nature of the property, its compatibility with the expressive activity that is being restricted, and the government's policy and practice to ascertain whether it intended to designate a public forum.
Question 2: Regarding state employees: Do state employees have the rightto choose to join or not join a labor organization and be free frominterference or coercion by others in making that choice?
Yes. Section 1 of Ark. Const. amend. 34 provides:
 No person shall be denied employment because of membership in or affiliation with or resignation from a labor union, or because of refusal to join or affiliate with a labor union; nor shall any corporation or individual or association of any kind enter into any contract, written or oral, to exclude from employment members of a labor union or persons who refuse to join a labor union, or because of resignation from a labor union; nor shall any person against his will be compelled to pay dues to any labor organization as a prerequisite to or condition of employment.
Section 11-3-303 of the Code provides:
 No person shall be denied employment because of membership in or affiliation with a labor union, nor shall any person be denied employment because of failure or refusal to join or affiliate with a labor union, nor shall any person, unless he shall voluntarily consent in writing to do so, be compelled to pay dues or any other monetary consideration to any labor organization as a prerequisite to, condition of, or continuance of employment.
Subsection 11-3-401(a) further makes it a felony "for any person by the use, or threat of the use, of force or violence to prevent any person from engaging in any lawful vocation within this state." In addition, A.C.A. § 5-51-309(a), contained within the Sabotage Prevention Act, A.C.A. §§ 301 through 309, provides:
 Nothing within this subchapter shall be construed as impairing, curtailing, or destroying any right of employees and their representatives to self-organization to form, join, or assist labor unions or to bargain collectively through representatives of their own choosing or to engage in concerted activities.
The foregoing clearly protect a state employee's right to make an uncoerced decision regarding union membership.[2]
Question 3: Regarding access: Do representatives of labor organizationshave the same rights of access to state buildings and public space as anyother member of the public (e.g., parking lots, cafeterias, lobbies andother facilities and space that is open to the public)?
Almost certainly, "yes," subject to the condition that the mere fact of public access does not necessarily qualify a public space or building as a public forum in which a labor organization might solicit members. SeeKokinda, supra (barring political advocacy on a public sidewalk adjacent to a post office); Ark. Op. Att'y Gen. No. 91-307 (characterizing as an issue of fact whether any publicly accessible area constitutes a public forum).
The initial pertinent inquiry is whether other members of the public are likewise barred from engaging in solicitation. If not, the denial of access — and, by extension, the denial of a forum to engage in speech activity — would clearly amount to suppression of speech based upon content. Any such content-oriented suppression of speech must be tested under the following strict-scrutiny standard: "For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. Carey v. Brown, 447 U.S. 455, 461 (1980)." Perry,460 U.S. at 45. Compare Hill v. Colorado, 530 U.S. 703 (2000) (declaring that content-neutral time, place and manner restrictions, by contrast, will be upheld if narrowly tailored to serve a significant government interest, leaving open ample alternative channels of communication).
In Hill, the Court reaffirmed that "government regulation of expressive activity is `content neutral' if it is justified without reference to the content of regulated speech." 530 U.S. at 720. Any public restriction on union members' access to public areas in which other members of the public are permitted to solicit clearly fails this test, triggering the stricter test set forth in Perry. In my opinion, no court would conclude that such viewpoint-oriented denial of access marks a narrowly tailored effort to serve a compelling state interest. Accordingly, I believe union members cannot be denied rights of access available to other members of the public, although they might be subject to general restrictions on solicitation if warranted under whatever standard applies using the guidelines discussed in my response to your first question.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] Despite the indication in Forbes that restrictions on speech are subject to strict scrutiny in both public forums and limited public forums, the Court has more recently suggested that the standards of review applicable to these two categories are not identical. In Good NewsClub v. Milford Central School, 533 U.S. 98, 106 (2001) the Court remarked: "If the forum is a traditional or open public forum, the State's restrictions on speech are subject to stricter scrutiny than are restrictions in a limited public forum." The Court further offered the following with respect to the standard applicable to limited public forums:
 When the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech. The State may be justified "in reserving [its forum] for certain groups or for the discussion of certain topics." Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 829 (1995); see also Lamb's Chapel, supra, at 392-393. The State's power to restrict speech, however, is not without limits. The restriction must not discriminate against speech on the basis of viewpoint, Rosenberger, supra, at 829, and the restriction must be "reasonable in light of the purpose served by the forum," Cornelius v. NAACP Legal Defense Ed. Fund, Inc., 473 U.S. 788, 806 (1985).
533 U.S. at 106-07.
[2] I have discussed only state law because the National Labor Relations Act, 29 U.S.C. § 151 et seq., which addresses union organizing activities, excludes from the definition of "employer" "the United States . . . or any state or political subdivision thereof."29 U.S.C. § 152(2). For a general discussion of how federal law has influenced state legislation applicable to the public sector, see Benjamin Aaron, Unfair Labor Practices and the Right to Strike in the Public Sector:Has the National Labor Relations Act Been a Good Model? 38 Stan. L. Rev. 1097 (1986).