Dear Ms. Burkett:
On behalf of the government of the City of Denham Springs, you have requested a legal opinion concerning the constitutional validity of the provisions of the city's ordinance generally prohibiting the distribution of handbills upon unoccupied motor vehicles and vacant residences and, in the case of occupied motor vehicles and inhabited residences, allowing the handbill to be given directly to a person occupying the vehicle, if that person is willing to accept it, or inhabiting the residence. The ordinance further allows, unless an inhabitant of the residence requests otherwise, the handbill to be left at an inhabited residence in a secure place where it cannot be blown or drifted about (but cannot be left in a mailbox in violation of federal regulations). The ordinance further requires that the names and addresses of the originator of the handbill and its distributor be printed on the handbill. And the ordinance forbids the attachment of such printed material to poles and other objects on any public street, alley, sidewalk, or public way. You ask for a detailed analysis of each major provision of the ordinance. In this opinion, we will attempt to address all the major issues we see with the provisions of the ordinance and will begin with the most obviously invalid provision.
It appears that you or the City of Denham Springs has caused to be faxed to us a wealth of legal materials relevant to your request. Such materials include another copy of the ordinance, a copy of R.S. 30:2521et seq. (part of Louisiana's Litter Reduction Law), a copy of Attorney General's Opinion 07-0253, a copy of City of Bogalusa v. May, 252 La. 629,212 So.2d 408 (La. 1968), and a copy of State v. Fulton, 337 So.2d 866
(La. 1976). R.S. 30:2522(4) defines, for purposes of this legislation, the word Litter and expressly provides the following exclusion from the term Litter.
 While being used for or distributed in accordance with their intended uses, litter shall not include political pamphlets, handbills, religious tracts and newspapers, and other similar printed materials, the unsolicited distribution of which is protected by the Constitution of the United States or the Constitution of Louisiana. *Page 2 
In the case, City of Bogalusa v. May, supra, the Supreme Court of Louisiana, following the U.S. Supreme Court case of Talley v. State ofCalifornia, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960), held that a city ordinance forbidding the distribution of all circulars and pamphlets in the city unless they contained the identification of the distributor was unconstitutional as violative of rights of free speech and of the press. Based on the above-described legal materials, Louisiana Attorney General Opinion 07-0253 concluded that the Town of Lockport does not have the authority to prohibit a company from delivering unsolicited newspapers, telephone books, or other printed material onto private property, since the distribution of these materials is constitutionally protected. And in the case of State v. Fulton, supra, the Supreme Court of Louisiana held that the statute forbidding distribution of any pamphlets and the like relating to a candidate for election, unless the pamphlet disclosed the name of the person responsible for its publication, was not narrowly limited to those situations where the information called for had a substantial connection with the governmental interests sought to be advanced and was incompatible with basic constitutional guarantees.
It would seem from all of these legal materials and from other U.S. Supreme Court cases that grave doubt would be cast upon the asserted validity of the Denham Springs' ordinance dealing with handbills. And certainly, Section 6-30, requiring the name and address of the originator and distributor of the handbill or printed material, would be in grave danger of being held unconstitutional by the Supreme Court of Louisiana, under the rationale of the cases cited above. As recently as June of 2002, the U.S. Supreme Court, in Watchtower Bible and Tract Society ofNew York, Inc. v. Village of Stratton, 536 U.S. 150, 122 S.Ct. 2080,153 L.Ed.2d 205 (2002), struck down a village ordinance requiring door-to-door distributors of handbills to obtain a permit before distributing the handbills and to display such permit, which contained the name of the distributor, upon demand. One of the primary reasons that the court struck down the ordinance was the loss of anonymity of individuals supporting causes. Such a holding reconfirms the Talley andBogalusa cases, supra.
In addition, the definition of the word litter in a state statute might not itself alone mean that a municipality cannot, for its own purposes and with enforcement funded solely by the municipality itself and not funded in any part by a grant given pursuant to the state litter program, have a different definition. This situation does not necessarily create an irreconcilable conflict between municipal ordinance and state law, because such a municipal ordinance would not permit what the state statute outlaws nor prohibit what the state statute expressly permits.See, for example, State ex rel. Sutton v. Caldwell, 195 La. 507,197 So. 214 (1940). An example of this rule expressly referred to in that case is as follows:
 "[I]f the state should pass a law fixing the height beyond which it would be unlawful to erect a chimney, no one would doubt that any city in the state and within an earthquake zone might further restrict the height of chimneys within the city." *Page 3 
 State ex rel Sutton, supra, 195 La. at 519, 197 So. at 519. However, in this case the state statutory definition of litter excludes from the scope of its definition handbills in circumstances that the First
Amendment would protect. Of course, the municipality cannot enact an ordinance which violates the First Amendment of the U.S. Constitution. And it is for that reason a municipality cannot go beyond this particular state statute.
Moreover, the general jurisprudential rule is that the governmental interest and purpose of preventing litter is insufficient justification to place restrictions on the free speech activity of individuals' distributing handbills and other printed material. See Schneider v.State of New Jersey, Town of Irvington, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939) and its progeny. The municipality may outlaw the act of littering by someone who actually litters but may not curtail the free speech rights of those simply distributing their handbills and printed material to others who might themselves create litter.
Some of the provisions of the Denham Springs ordinance are a bit different from the other legislative provisions featured in the above-described legal materials. Some do seem to be aimed at the act of littering, instead of mere distributing, and seem to prohibit distributors of handbills from creating litter by simply throwing the printed material on the ground, instead of handing it to a person. Some of the provisions of the ordinance expressly allow the distribution of handbills but only seek to provide some regulation in the manner of their distribution. Such provisions would include Sections 6-28 and 6-29. In Section 6-28, distribution of handbills is expressly allowed through the manner of handing or transmitting the printed material directly to an occupant (or other person then present upon the premises) of an inhabited private residence or, unless requested by anyone upon such premises not to do so, of placing or depositing it so as to secure or prevent it from being blown or drifted about. In Section 6-29, a handbill may be handed, transmitted, or distributed to the owner or other occupant of any automobile or other vehicle, who is willing to accept same. Otherwise, a handbill may not be simply thrown or deposited into the yard or upon property of a private residence in an unsecured manner nor deposited in or upon a parked or vacant motor vehicle. And, under Section 6-27, it cannot be deposited upon an uninhabited or vacant residence at all.
We think that the city can try to make an argument that some of these particular restrictions contained in Sections 6-28 and 6-29 do not actually curtail free speech but are merely time, place, and manner restrictions that are content-neutral, perhaps serve a legitimate government purpose, are perhaps narrowly drawn to effect that governmental purpose, and specifically allow the speech to be conveyed by certain ways in the alternative to the prohibitions. In Heffron v.International Society for Krishna Consciousness, Inc., 452 U.S. 640,101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), the U.S. Supreme Court upheld a Minnesota State Fair Rule that required the sale and distribution of all merchandise, including printed or written material, to be from a fixed, duly licensed location on the fair grounds, as against the argument that Krishna followers perform the religious ritual of going among the public to sell and distribute their literature and solicit donations. The court held the rule to be a mere time, place, and manner regulation of speech which was content-neutral and narrowly tailored to serve *Page 4 
the legitimate governmental purpose of maintaining an orderly movement of the crowd at the fair.
Nevertheless, if the City of Denham Springs decides to try to justify its handbill ordinance on that basis, it must be remembered that, even as to time, place, and manner regulations, the courts will require the governmental entity to make a showing on the record that its purpose is a legitimate governmental purpose and that the regulation is narrowly drawn to achieve that purpose and is content-neutral. In the case of the Denham Springs ordinance, it would be helpful if the city had actual records showing that distributors of handbills are consistently caught in the act of littering itself and that excessive funds are being spent to clean up the trash and litter from these handbills. A mere theoretical argument might not suffice.
Despite all these arguments, however, the cases seem to suggest thatany municipal restriction on handbill distribution is not favored in law, and a court might construe the whole Denham Springs ordinance as one whole unit and strike it down as an overbroad interference with free speech rights. In such a case, the court would not pick small discrete parts of the ordinance and strain to construe them as mere time, place, and manner regulations that were content-neutral and narrowly tailored to serve a legitimate governmental purpose and then strike down other discrete parts of the ordinance. A legal argument can be made that the provisions of the ordinance are not severable for First Amendment purposes; sometimes a mere threat of governmental action, prosecution, and remedy can stifle free speech and thereby ultimately run afoul of the First Amendment. See, for example, Watchtower, supra (loss of anonymity in having to obtain and display a permit chills the free speech of individuals who support unpopular causes). And it appears that in the history of many past cases, the courts simply display a belief that the right to distribute handbills outweighs any concerns about resultant litter. Schneider, supra.
Section 6-31, prohibiting the attachment of handbills and printed material to poles, posts, or other objects on any public street, sidewalk, or public way, might pass constitutional muster, if narrowly construed so that the pole, post, or object must be public property and if the city has never permitted anyone to attach handbills, posters, advertisements, or the like to them so as to create a public forum for speech. See, for example, 16A Am.Jur.2d "Constitutional Law" § 519 and the authorities and cases cited therein. R.S. 18:1470 already prohibits any political advertising on public property, and La.Const., Art. 7, § 14, prohibits the use of public property and resources for private use or a private purpose. The prohibition also contained in this section of the ordinance against placing banners across a public street can be argued to be necessary for the regulation of traffic and for the protection of overhead utilities across streets. The same might be true for sidewalks, but it must be remembered that, as explained in the American Jurisprudence article, supra, and some of the cases cited therein, the surface of public sidewalks is a traditional public forum for speech, speech which cannot be simply or fully prohibited thereon. *Page 5 
There is one suggestion for an alternative that might be constitutionally valid: It appears that a yet-to-be-tried method of handbill distribution control would be to create something like the "do-not-call" list. First Amendment rights to distribute handbills may trump a municipality's power to adopt ordinances and to regulate handbill distribution, but they do not trump an individual's private property right to keep trespassers off his property or his own First Amendment right to choose not to listen to another's speech. We may not know yet what would happen if a municipality adopted an ordinance creating the opportunity for private citizens to come into the Mayor's office and sign up to be on a list refusing all handbills and printed material (except those the citizen has personally contracted for, such as the delivery of newspapers). The private citizen could list the municipal address of his property and the year, make, and license plate numbers of his automobiles. The ordinance would require that all those wishing to distribute handbills must first come by the Mayor's office, not to obtain a permit, but to obtain a copy of the handbill-refusal list, and the ordinance would further prohibit the distribution or deposit of any handbill on any listed property or automobile. All the municipality would be doing is giving effect to and enforcing a private choice of individual private citizens' in their private property rights and in their own First
and Fourth Amendment rights to be free of unwanted handbills.
We trust that this opinion has adequately answered your request, but if you have any further questions, please do not hesitate to ask them of us. With warmest regards, we remain
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY: __________________________
 THOMAS S.HALLIGAN
 Assistant Attorney General
 JDC/TSH/sfj